**CAMERON IRON WORKS, INC.**

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION.**

Civ. A. No. 70–H–734.

United States District Court,
S. D. Texas,
Houston Division.

Dec. 18, 1970.

William Key Wilde, Carlton Wilde, Bracewell & Patterson, Houston, Tex., for plaintiff.

Charles Reischel, EEOC Task Force, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

SEALS, District Judge.

In this action, the court is called upon to determine whether the Equal Employment Opportunity Commission may compel Cameron Iron Works to produce certain evidence and documents as part of the Commission's investigation of the company. On July 8, 1970, Cameron was served with a Commissioner's charge alleging violations of § 703(a) and (d) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. On July 15, Cameron was served with six individual charges and a demand for access to evidence and production of documents. The following day, Cameron filed this action, seeking modification of the Commissioner's demand. The Commissioner then filed a cross-petition to enforce his demands. The court held a pretrial conference with the parties on July 23, and ordered them to attempt settlement. Since that time, petitioner has granted the Commission access to a substantial portion of its records and documents, and the parties have stipulated those items which petitioner still refuses to furnish and which consequently remain in dispute.

Petitioner's principal contention focuses upon the alleged inadequacy of the Commissioner's charge. Cameron maintains that the charge fails to comply with the mandate of the statute to "set

forth the facts upon which it is based." Petitioner dismisses as "broadly drawn and highly inaccurate conclusions" the Commissioner's allegations regarding the minority composition of Cameron's work force, its recruitment system, educational requirements, testing procedures, promotion policy and apprenticeship programs, and petitioner's maintenance of segregated facilities.

A cursory glance at the Commissioner's charge of June 12 reveals much more than the Commissioner's mere conclusions. The Commissioner recites statistics that show a high probability of discrimination (less than 1% of Cameron's white collar workers is black and less than 2% is Mexican-American); he describes both the operation and the implications of Cameron's recruitment system, hiring practices and promotion policies.

 Such statistics would alone be sufficient to form the basis of an EEOC complaint. The Fifth Curcuit has recently confirmed our reliance on statistics by granting habeas corpus relief to a Mexican-American who had been indicted by a grand jury, the historical composition of which, he alleged, showed a pattern of discrimination against members of his ethnic group.

"These figures do more than speak for themselves—they cry out 'discrimination' with unmistakable clarity. The statistical summary for the ten-year period demonstrates conclusively that the exclusion of Spanish surnamed members from the grand jury which indicted appellant * * * was no isolated aberration occurring by chance in a non-discriminatory system of selection." Muniz v. Beto, 434 F.2d 697, at 702 (5th Cir. November 5, 1970).

The Eighth Circuit has also utilized statistics to find employment discrimination as a matter of law:

"We hold as a matter of law that these statistics, which revealed an extraordinarily small number of black employees, except for the most part as menial laborers, established a violation of Title VII of the Civil Rights Act of 1964." Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 at 426 (8th Cir. 1970).

In the case at bar, we are at the moment unconcerned with the merits of the Commissioner's charge. We need here inquire only whether the charge is legally sufficient to initiate the investigatory process. The law is clear that far less is required to uphold the validity of the Commissioner's charge than to find conclusively a pattern of discrimination.

"* * * procedural technicalities are not to stand in the way of Title VII complainants. Nothing in the Act commands or even condones the application of archaic pleading concepts. On the contrary, the Act was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship. It would falsify the Act's hopes and ambitions to require verbal precision and finesse from those to be protected, for we know that these endowments are often not theirs to employ.

In the courts we have largely liberated ourselves from the tentacles of ancient pleading rules * * * and there are few if any vestiges remaining in administrative proceedings * * *. It is more important that pleading rules be relaxed in the decidedly informal atmosphere of Title VII. * * * This Act was designed to protect a worker from becoming an industrial pariah, and his lack of literary acumen should not stymie his quest for equal employment opportunity." Sanchez v. Standard Brands, Inc., 431 F.2d 455, 465 (5th Cir. 1970).

We hold here that the charge at issue supplies Cameron with ample notice of the Commissioner's allegations, and that it is sufficient to launch the investigatory process.

 Cameron further maintains that the EEOC's demand for evidence pertaining to salaried employees ought to be denied because it is not relevant to

the private charges of discrimination that form the basis of the Commissioner's charge. The allegations made by the Commissioner, however, together with the specific complaints filed by the hourly employees, provide abundant justification for a company-wide investigation of Cameron's employment practices. Judge Brown has affirmed the validity of this approach:

> "In dollars Employee's claim for past due wages may be tiny. But before a Court as to which there is no jurisdictional minimum * * * it is enough on which to launch a full scale inquiry into the charged unlawful motivation in employment practices." Jenkins v. United Gas Corp., 400 F.2d 28, 33 (5th Cir. 1968).

Very recently, the Eighth Circuit has upheld this view by declaring that

> "a single charge of employment discrimination under Title VII found by the EEOC to rest upon reasonable grounds may serve to launch a full-scale inquiry into the alleged unlawful motivation in employment practices." Parham v. Southwestern Bell Telephone Co., supra, 433 F.2d at 425.

We unequivocally reject petitioner's contention that the EEOC must limit its investigation to alleged discrimination against hourly employees.

■ Related to petitioner's objection to the extent of the Commissioner's inquiry is Cameron's claim that production of the disputed information would impose an intolerable burden upon the company. It is of course true that Title VII does not contemplate the financial ruin of American industry. But no such burden is involved here. Defendant asserts, and petitioner fails to deny, that Cameron regularly prepares, for the Department of Defense, lists of its promotions of both hourly and salaried employees. It is only the preparation of the two promotion lists that will require expenditure of a significant number of man-hours, and the court will grant Cameron a sufficient amount of time in which to complete this task. The information sought is, however, of compelling importance to the Commission's investigation, and the company cannot prevent disclosure merely by demonstrating the inconvenience of compliance.

■ A last contention is that the EEOC is attempting to assert broad investigatory powers not authorized by its enabling legislation. Both petitioner and defendant, in their briefs, quote extensively from the Congressional Record to demonstrate that the legislative history of Title VII argues for a broad or narrow interpretation of its provisions. This court will not add further to this futile debate, for we deem it beyond the scope of present inquiry. We have herein found the Commissioner's charge to comply with the statutory requirements, as interpreted by subsequent court decisions, and we have found that all information which the Commission seeks is relevant to its investigation of Cameron. Academic forays into the realms of speculation about Congressional motives may provide an interesting and useful diversion to students of the legislative process, but such considerations contribute nothing to what we need determine here.

■ Finally, the court feels obliged to order, pending appeal of this decision, the immediate production of the disputed records. Of the four factors that determine whether to stay an order of production, none favor Cameron. On the basis of the overwhelming weight of authority, the court is convinced that petitioner cannot prevail in its appeal. As heretofore demonstrated, petitioner has not made a case for irreparable injury if the records are produced. Six months have already elapsed since the filing of the Commissioner's original charge; further delay at this early stage would thwart both the letter and the spirit of Title VII. Furthermore, the public interest, from the rights of these individual complainants to the broader interests of social and racial peace, will be best served by requiring Cameron now to come forth and subject itself to public scrutiny.

Accordingly, it is ordered that Cameron's petition to set aside or modify the Equal Employment Opportunity Commission's demand for access to evidence and the production of documents be, and it is hereby denied. It is further ordered that petitioner comply with defendant's demand for access and production within 30 days from the date of this order. Upon petitioner's compliance with such order, defendant shall move to dismiss this action.

Clerk will file this Memorandum and Order and provide counsel for all parties with true copies.