NEW ORLEANS PUBLIC SERVICE,
INC., Plaintiff-Appellee,

v.

William H. BROWN, III, Chairman, et
al., etc., Defendants-Appellants.

No. 74–1697.

United States Court of Appeals,
Fifth Circuit.

Jan. 27, 1975.

Rehearing and Rehearing En Banc
Denied March 19, 1975.

William A. Carey, Gen. Counsel, William H. Robinson, Associate Gen. Counsel, Isabelle R. Cappello, Asst. Gen. Counsel, Diane S. Greenberg, Joseph P. McCormick, John F. Goemaat, Attys., Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg, Atty., Charles L. Reischel, Ramon V. Gomez, EEOC, Washington, D. C., Charles White, EEOC, New Orleans, La., for defendants-appellants.

Michael J. Molony, Jr., New Orleans, La., for plaintiff-appellee.

Howard L. Mocerf, Jerry Kronenberg, Chicago, Ill., Milton Smith, Gen. Counsel, Richard Berman, Labor Relations Counsel, Washington, D. C., for Chamber of Commerce, amicus curiae.

Before TUTTLE, WISDOM and GOLDBERG, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal by the Equal Employment Opportunity Commission and individual complaining parties from an injunction forbidding the Commission from pursuing any investigation of the New Orleans Public Service, Inc. and several labor organizations pursuant to a charge filed by EEOC Commissioner William H. Brown, III. Viewed against a backdrop of the many proceedings pending and disposed of in the Courts of this Circuit dealing with the provisions of Title VII of the Civil Rights Act of 1964 (Equal Opportunity Act) (42 U.S.C. § 2000e–9), we conclude that were this decision of the trial court to stand it would render a substantial part of Title VII a nullity. We therefore reverse.

Starting out as a run-of-the-mill Commissioner's charge,[1] Commissioner Brown

---

1. § 706(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(b) provides in part:
    "Whenever it is charged in writing under oath by a person claiming to be aggrieved, or a written charge has been filed by a member of the Commission where he has reasonable cause to believe a violation of this title has occurred (and such charge sets forth the facts upon which it is based) that an employer . . . or labor organization has engaged in an unlawful employment practice, the Commission shall furnish such employer, . . . or labor organization . . . with a copy of such charge and shall make an investigation of such charge, provided that such charge shall not be made public by the Commis-

filed his charge on January 4, 1972 following receipt by the Commission of six individual charges of employment discrimination filed between May 5, 1971 and July 30, 1971. These individual charges allege that the company had violated Title VII by refusing to hire blacks, unjustly discharging blacks, systematically excluding blacks from employment, maintaining segregated facilities, and allowing the harassment of blacks. After the Commissioner's charge had been served on the employers with a request for access to information relevant to the Commission's investigation of the charges and after the request had been ignored the Commission caused an administrative subpoena to be served on the company on August 11, 1972. On August 18 the company petitioned the Commission to revoke the subpoena, which petition was denied on August 29, 1972, although the subpoena was modified to the extent that such information as had been previously submitted in connection with other Commission investigations of NOPSI need not be again produced. The Commission also stated in its response that it would copy the subpoenaed documents at its own expense or make arrangements properly to reimburse the company.

On September 14, the company filed a complaint with the district court asking that the Commission be enjoined from enforcing the subpoena duces tecum and from further investigating the Commissioner's charge. The Commission, counterclaimed for enforcement of its subpoena. On November 20, 1972 the Commission moved the district court for judgment pursuant to Rule 81(a)(3), or in the alternative, for summary judgment. After an oral hearing was held at which

company officials testified to the burdensome nature of the compilation of records that would be necessitated by enforcing the subpoena, more than a year later, in January, 1974, the trial court concluded both that the enforcement of the subpoena would be too burdensome, in that it required a compilation of data by the utility company, and that the enforcement of the subpoena was not justified because Commissioner Brown's charge was invalid. The court thus enjoined any further investigation under the charge.

Under the requirements of the statute, as paraphrased by the court: "[A] commissioner first must have had reasonable cause to believe that the discriminatory practice actually did exist, and further, the Commission must have presented a concise statement of facts on which the charge rested." The court determined that the "facts" as found by the court "disclose[d] no basis for a reasonable cause by the charging commissioner to believe that . . . discriminatory practices actually did exist."

The trial court was under no illusions as to the unique position which it took with respect to the Commissioner's charge. Neither the court itself nor NOPSI in its brief in this Court points to a single decided case in which a charge as fully documented as the one before us has been held to be insufficient for the purpose of commencing the investigatory procedures by the Commission.[2]

Since the charge filed by Commissioner Brown is the all-important element in the case we consider it necessary to quote it in full to show how completely the trial court misunderstood its responsibility when faced with the request for

sion. If the Commission shall determine, after such investigation, that there is reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion."

2. The employer takes the trial court's ruling to its logical and unavoidable conclusion when it argues "mere statistics" are insufficient to support the commencement of an

EEOC investigation, despite the fact that similar statistics have been consistently upheld as proving a prima facie case of discrimination. *See, e. g.,* United States v. Hayes International, 415 F.2d 1038, 1043 (5th Cir. 1969). Thus the Commissioner would be required to show more evidence to *commence* his investigation than he would to invoke legal sanctions at the investigation's conclusion. This argument is manifestly untenable and absurd.

the enforcement of a subpoena as authorized under § 709(a), 42 U.S.C. § 2000e–8(a), § 710, 42 U.S.C. § 2000e–9 (Supp. II 1972) and § 161 of Title 29 which is incorporated by reference as to the subpoena power.

The charge was worded as follows:

"Pursuant to Title VII, Section 706(a) of Civil Rights Act of 1964, I charge the following employer and unions with unlawful employment practices:

New Orleans Public Service

317 Barone Street

New Orleans, Louisiana

 and

Cooperative Power Division Employer Association of New Orleans

New Orleans, Louisiana

Cooperative Electric Distribution Division

Employees Association of New Orleans

New Orleans, Louisiana

Cooperative Gas Department Employees Association of New Orleans

New Orleans, Louisiana

I have reasonable cause to believe that the above employer and unions are within jurisdiction of the Equal Employment Opportunity Commission and have violated Section 703(a), (c), and (d) of the Civil Rights Act of 1964 by discriminating against Negroes, Spanish Surnamed Americans, Jews and females on the basis of race, national origin, religion and sex with respect to recruitment, hiring, job assignment, seniority, promotion, representation, and other terms and conditions of employment.

1. Respondent employer discriminatorily refuses or fails to recruit and hire Negroes, Spanish Surnamed Americans, Jews and females in the same manner it recruits and hires Caucasians.

A. Of a total company employment of 3052, 695 (22.8%) are Negro. The population of New Orleans is 45% Negro.

B. The company employs 1 Spanish Surnamed American. The estimated Spanish Surnamed population of New Orleans is 5%.

C. Females account for 248 (8.1%) of the company's total employment.

2. Respondent employer discriminatorily places Negroes, and females in traditionally relegated or lower-paying jobs.

A. Of 1,117 white collar workers, 24 (2.1%) are Negro. Of these 24 Negro white collar workers 14 (58%) are office and clerical workers.

There is a total of 1877 blue collar workers. Negroes hold 617 (32.9%) of the blue collar jobs and account for 53 (86.9%) of laborers and 54 (93.1%) of all service workers.

Females hold 238 (21.3%) of all white collar jobs. Of the female white collar workers 221 (93%) are office and clerical employees. Only 2 (0.1%) hold blue collar jobs.

3. Respondent employer discriminatorily limits and restricts Negroes, Spanish Surnamed Americans and females from higher-paying positions as officials and managers, professionals and technicians.

4. Respondent employer discriminatorily limits and restricts Negroes, Spanish Surnamed Americans and females in certain job categories.

5. Respondent employer discriminatorily maintains segregated departments based on race and sex.

6. Respondent employer discriminatorily maintains a seniority system that discriminates against Negroes, Spanish Surnamed Americans and females.

7. Respondent employer discriminatorily fails to provide Negroes, Spanish Surnamed Americans, Jews and females with equal job opportunities benefits and promotions afforded other employees.

8. Respondent employer discriminatorily fails to provide equal training opportunities to Negroes, Spanish Surnamed Americans and females.

9. Respondent Union discriminatorily fails equally to represent Negores, Spanish Surnamed Americans and females.

10. Respondent Union discriminatorily restricts Negroes, Spanish Surnamed Americans and females from its membership.

11. Respondent employer and union have further discriminated against Negores, Spanish Surnamed Americans, Jews, and females in all policies and practices, like, related to, or growing out of the specific practices enumerated above.

The class aggrieved includes, but is not limited to, all persons who have been and continue to be or might be adversely affected by the unlawful practices complained of herein.

This charge applies to the home office and all of the employees' facilities."

As we have stated the trial court cited no case, and none is cited by the appellant, to conflict with the plethora of cases holding that charges similar to that involved here, even without the statistical information which this charge contains, are sufficient to commence the investigatory procedures by the Commission, including the power to seek a subpoena for the kind of information sought here. See, General Employment Enterprises, Inc. v. EEOC, 440 F.2d 783 (7th Cir. 1972); Local No. 104, Sheet Metal Workers Int'l Ass'n v. EEOC, 439 F.2d 237 (9th Cir. 1971); Sparton Southwest, Inc. v. EEOC, 461 F.2d 1055 (10th Cir. 1972); Bowaters Southern Paper Corp. v. EEOC, 428 F.2d 799 (6th Cir. 1970), cert. denied 400 U.S. 942, 91 S.Ct. 241, 27 L.Ed.2d 246 (1970); Adolph Coors Co. v. EEOC, 464 F.2d 1270 (10th Cir. 1972), cert. denied 410 U.S. 929, 93 S.Ct. 1365, 35 L.Ed.2d 591 (1973).

▮ The trial court seems to have been impressed with a feeling that there was some constitutional protection under the Fifth Amendment to prevent the Commission from proceeding to *ascertain* the facts until it was already able to *allege* the facts in the charge initiating the procedure. The language of Local No. 104, Sheet Metal Workers Int'l Ass'n v. EEOC, 439 F.2d 237, at 241 seems to be an apt answer to such a contention. "Local 104's vigorous exhortation to the court to interpret the language quoted above [and such charge sets forth the facts upon which it is based] to mean that the Commission, in its investigation, must not ask any questions *to which it does not already know the answers,* has about it the aura of another, and bygone, legal era." [3] [Emphasis added].

▮ We now come to the second issue on the appeal—the correctness of the trial court's order quashing the subpoena in its entirety. Even though the subpoena had demanded information which, either because of the complexity of its compilation or the inordinate expense of sifting it out, or for some other proper cause, it was within the power of the trial court to modify, the court erred in placing the burden on the EEOC to restructure its subpoena merely because full and complete compliance was arguably troublesome and expensive to the employer. Moreover, the court placed the limitation on the power of the subpoena on an improper basis when it held that it was invalid merely because it required the company to make compilations. In dealing with a somewhat similar question this Court said in Burns v. Thiokol Chemical Corp., 483 F.2d 300, 307 (5th Cir. 1973), "Of course, the extensive listing of information required to fully answer the interrogatories is some-

---

**3.** It should be noted that the only charge in this case was in the following language: "I have reasonable cause to believe that the abovementioned respondents . . . have violated (here he named the sections of the act and asserted the Commission's jurisdiction). The following practices have occurred.

'That the respondents . . . have historically, and subsequent to the effective date of Title VII of the Civil Rights Act of 1964 discriminatorily restricted union membership of minority group members because of race or national origin.' "

what cumbersome. But, as the Ninth Circuit has pointed out, the fact that an interrogatory calls for a list did not make it improper."

This Court decided as long ago as 1936 in Bradley Lumber Co. of Arkansas et al. v. Nat'l Labor Relations Bd. et al., 84 F.2d 97 (5th Cir. 1936), in a case in which an employer sought to enjoin an investigation by officials of the National Labor Relations Board that such an action would not lie. This Court said:

> "No doubt an investigation may, as the bill asserts, stir up some feeling among employees and cause some inconvenience by taking witnesses from their work, but these things are incident to every sort of trial and are part of the social burden of living under government. They are not the irreparable damage which equity will interfere to prevent; . . . "

■ The Supreme Court in Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946) established what has since become the rule for interpreting regulatory statutes, namely that it is for the agency rather than a district court to determine in the first instance the question of coverage in the course of the preliminary investigation into possible violations. *See* 327 U.S. at 214, 66 S.Ct. 494. Then speaking of the showing of coverage which an agency must make to secure judicial enforcement of a subpoena, the Court in Oklahoma Press stated that: "Any possible constitutional requirement of that sort was satisfied by the administrator's showing in this case, including not only the allegations concerning coverage, but also that he was proceeding with his investigation in accordance with a mandate of Congress and that the record sought was relevant to that purpose." 327 U.S. at 215–216, 66 S.Ct. at 509.

■ There could be no question but that the documents sought in this case were relevant to the inquiry sought to be made by the EEOC. It was clearly the obligation of the Court to enforce the subpoena that asks for the production of any "evidence of [the] person being investigated or proceeded against that relates to unlawful employment practices covered by this Title and is relevant to the charge under investigation." § 709(a), 42 U.S.C. § 2000e–8(a). The trial court was clearly in error in quashing the subpoena in its entirety. It was also in error in limiting the right of the EEOC to obtain information that did not need to be "compiled" by the company. No different standards should be applied to the handling of this subpoena than is ordinarily the rule under Rule 45(b) Federal Rules of Civil Procedure which provides that the court may upon motion promptly made: "(1) quash or modify the subpoena if it is unreasonable and oppressive or (2) condition denial of the motion upon the advancement by the person in whose behalf the subpoena is issued of the reasonable cost of producing the books, papers, documents, or tangible things." The essential element here is that the trial court must view this as a valid charge by the Commissioner whose purpose is to investigate the conditions of employment alleged to be in violation of the federal statute and that liberality of discovery is an essential element in such an investigation. The action taken by the trial court here would totally eviscerate the powers of the EEOC to function under its charter from Congress. The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.