EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Applicant-Appel-lee,

v.

BAY SHIPBUILDING CORPORATION, Respondent-Appellant.

No. 81–1328.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 15, 1981.

Decided Dec. 31, 1981.

---

Clifford B. Buelow, Davis, Kuekthau, Vergeront, Stover, Werner & Goodland, Milwaukee, Wis., for respondent-appellant.

Mark S. Flynn, E. E. O. C., Washington, D. C., for applicant-appellee.

Before CUMMINGS, Chief Judge, FAIRCHILD, Senior Circuit Judge, and PELL, Circuit Judge.

CUMMINGS, Chief Judge.

In July 1980 the Equal Employment Opportunity Commission (EEOC) applied to the district court for an order requiring Bay Shipbuilding Corporation (Bay) to obey a subpoena duces tecum issued by the EEOC and served upon Bay on March 6, 1980. The district court granted enforcement of the subpoena and Bay appealed to this Court. We granted a stay pending resolution of the appeal but now affirm.

Bay was the employer of a security guard, Ann Marie Keller. According to the affidavit accompanying the EEOC's application for enforcement of its administrative subpoena, on July 26, 1978, Keller filed a charge of discrimination with the EEOC's Milwaukee, Wisconsin, District Office alleg-

ing that Bay discriminated against her and other women because of their sex by denying them access into Bay's electrical department and its electrical training/apprenticeship program. In June 1979, Keller's charge was designated by the EEOC for special treatment under the EEOC's "Early Litigation Identification Program" (App. 31). The "ELI" program identifies charges suitable for an expanded, litigation-oriented investigation covering discriminatory practices like those affecting the "charging party," Keller in this case (EEOC Compliance Manual § 12). About five weeks later, at the suggestion of the EEOC's Milwaukee District Office, Keller amended her original charge to allege that Bay also discriminated against women employees by denying them access into the job classifications of "expediter, draftsman, carpenters, painters, pipefitters, outside cleanup crew and labor positions in reference to hiring, job assignments, training, transfers and promotions" (App. 49). The original charge was served on Bay in July 1978 and the amended charge a year thereafter.

As stated in the EEOC affidavit, in December 1979 the EEOC sent Bay a questionnaire consisting of twenty inquiries with respect to Bay's employment practices.[1] The questionnaire was prompted by an earlier ruling by the court below that the EEOC's investigation was then too incomplete to warrant a preliminary injunction. *EEOC v. Bay Shipbuilding Corp.*, 480 F.Supp. 925 (E.D.Wis.1979). Bay refused to comply with the questionnaire. Consequently a subpoena duces tecum was served upon Bay on March 6, 1980, directing Bay to respond to the questionnaire by March 14, 1980. The subpoena was authorized by Section 709(a) of Title VII of the Civil Rights Act of 1964 which grants the EEOC "access to * * * and the right to copy any evidence of any person being investigated or proceeded against that relates to unlawful employment practices * * * and is relevant to the charge under investigation" (42 U.S.C. § 2000e–8(a)). In 1972, Congress

1. The inquiries are reproduced in our Appendix A.

amended Title VII to give the EEOC the investigatory powers contained in 29 U.S.C. § 161 (42 U.S.C. § 2000e–9). By this amendment Congress granted the district courts jurisdiction to enforce subpoenas "upon application" by the EEOC (29 U.S.C. § 161(2)).

On the last day for compliance with the subpoena, Bay mailed the EEOC a petition to revoke the subpoena based upon fifteen objections to the ELI program, the amended charge, and the questionnaire.[2] On April 4, 1980, the EEOC's Milwaukee District Office denied the petition but extended the return date for the subpoena from March 14, 1980, to April 14, 1980. In a fifteen-page document the EEOC's "determination" carefully answered each of Bay's objections to compliance with the subpoena (App. 74–88).

On April 9, 1980, Bay requested the EEOC's general counsel to overrule the Milwaukee District Office's denial of Bay's petition to revoke the subpoena. The appeal was denied by the EEOC's general counsel on May 20, 1980, but he further extended the return date to June 9, 1980. In this "determination" the general counsel adopted each ground used in the District Office's prior denial (App. 121–122). On June 6 the EEOC proposed a settlement with Bay which was rejected on June 13, 1980, resulting in the July 2, 1980, EEOC application to the district court for enforcement of its administrative subpoena.

On July 30 Bay moved to dismiss the application on the ground that it was not a pleading within Rule 7(a) of the Federal Rules of Civil Procedure[3] and furthermore did not state a claim upon which relief could be granted. This motion was supported by a brief suggesting that if the application were not dismissed, it should be treated as a complaint to which Bay could file an answer. On August 5, 1980, the EEOC filed its brief requesting that defendant's motion to dismiss be denied "and that an immediate hearing be set on Plaintiff's application for subpoena enforcement" (App. 143). Bay filed a reply brief on August 19 asking permission to file an answer and counterclaim in response to the application of the EEOC. In the reply brief Bay also asserted that the EEOC application did not state a claim because it did not allege that (1) "the subpoena was issued pursuant to an investigation within the lawful authority of the plaintiff;" (2) "the subpoena is not indefinite;" and (3) "the information requested is relevant" (App. 150). In an August 22 letter to the district judge, the EEOC urged him to grant an expeditious hearing or deny the motion to dismiss outright, with five days for Bay to comply with the subpoena (App. 153).

About six months later, on February 12, 1981, the district court granted the EEOC's application to enforce the subpoena and denied Bay's motions to dismiss and to file an answer and counterclaim (25 EDP ¶ 31,635). Bay was ordered to comply with the subpoena by February 17, and its request for a stay pending appeal was denied.

In his decision and order enforcing the subpoena, Judge Evans rejected Bay's contention that the EEOC application could not institute a civil action because it was not a "complaint" within Rules 3 and 7(a) of the Federal Rules of Civil Procedure. The court held that Rule 81(a)(3) applied instead, which states that the Rules do not apply to proceedings for the enforcement of a subpoena if "otherwise provided by statute * * * or by order of the court in the proceedings." The court noted that the relevant statute did not require subpoena enforcement to begin with the filing of a complaint but rather "upon application" by the agency (19 U.S.C. § 161(2)). Even without this statutory deviation from the Rules, under Rule 81(a)(3) the court could have ordered that a complaint was unneces-

---

**2.** Bay's objections, unaccompanied by a brief or affidavits, are reproduced in Appendix B.

**3.** Rule 7(a) provides that "[t]here shall be a complaint and an answer; * * * [n]o other pleading shall be allowed * * *." Rules 2 and 3 provide that "[t]here shall be one form of action to be known as 'civil action.' " "A civil action is commenced by filing a complaint with the court."

sary. The court then held that since no complaint was required under the Rules, no answer would be allowed. This was not unfair, according to the district court, because (1) Bay's objections to the subpoena, contained in its submissions to the EEOC, were already before the court, (2) Bay already had had two subpoena revocation hearings before the EEOC, (3) Keller's amended charge was statutorily authorized and properly promulgated, and (4) the investigation of the truth of Keller's charges of employment discrimination was akin to the discovery process and therefore should be given a broad scope.

The court also held that a judicial hearing was not required in that the EEOC had twice considered Bay's attempts to revoke the subpoena and a judicial hearing would "only further delay the proceedings." Similarly, Bay's request to file a counterclaim was denied because it would bring further delay.

The district court rejected Bay's objections to the subpoena, since it found that the requests made in the subpoena were "relevant, specific, and not burdensome," and therefore enforceable under 29 U.S.C. §§ 161(1) and 161(2).[4] The court also decided that the subpoena was sufficiently definite and fell within the EEOC's statutory authority, thus meeting the requirements established in *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401. Finally, the court held that it was unnecessary for the application itself to allege that it satisfied the *Morton Salt* prerequisites to enforcement.

This appeal was brought and we granted a stay pending its resolution. For the reasons that follow, we now affirm.

## An Action to Enforce an EEOC Administrative Subpoena May Be Begun "Upon Application."

The district court correctly exercised its discretion by dispensing with the paper formalities of complaint and answer that would be required by the Federal Rules of Civil Procedure in an ordinary civil action. As its decision noted, the Rules do not apply to proceedings for enforcement of administrative subpoenas when "otherwise provided by statute or by rules of the district court or by order of the court in the proceedings" (Rule 81(a)(3)). The applicable statute granting jurisdiction to the district court, 29 U.S.C. § 161(2), specifically provides that enforcement is begun "upon application" by the agency to the court.[5]

Bay had an opportunity to file papers contesting enforcement of the subpoena, and it is not of much importance whether the papers were captioned "answer" or "motion to dismiss." Bay cannot in good faith argue that it was surprised that the district court, after denying its motion to dismiss, also denied its request to renew its objections under a different caption. When as here the defenses to enforcement concern only whether the district court has jurisdiction and whether the applicant has stated a claim, either an "answer" or a "motion to dismiss" serves to present the defenses to the court (Rule 12(b)). In addition to the two briefs in support of its motion to dismiss, Bay could have filed supporting affidavits. The summary nature of an enforcement proceeding of this sort has been judicially acknowledged as follows:

Obviously, if the enforcement of valid subpoenas, the issuance of which is a mere incident in a case, were to require

---

4. As previously noted, these Sections are made applicable to EEOC hearings and investigations by 42 U.S.C. § 2000e–9. Section 161(1) provides that a subpoena shall be revoked by the EEOC only if it requires evidence that "does not relate to any matter under investigation" or "does not describe with sufficient particularity" the evidence to be produced. Section 161(2) provides for district court enforcement of disobeyed subpoenas "upon application" by the agency.

5. In further deviation from the strictures of the Federal Rules of Civil Procedure, 29 U.S.C. § 161(2) states that the courts have enforcement jurisdiction not to hold a trial or a hearing or to render a final judgment, but simply "to issue * * * an order" requiring compliance with the subpoena.

all of the formalities of a civil suit, the administrative work of the [agency] might often be subject to great delay. We think that such was not the intention of the Congress, and that this clearly was indicated by the use of the simple and unambiguous words with which it ' described this proceeding.

*Goodyear Tire & Rubber Co. v. National Labor Relations Board,* 122 F.2d 450, 451 (6th Cir. 1941).[6] In any event, Bay raised its objections before the EEOC and they were also in the record below and considered by the district court.

### The Request to File a Counterclaim Was Properly Denied.

■ In its brief in support of the motion to dismiss, Bay "anticipate[d] that it [would] file counterclaims [to the application for enforcement] based upon the Administrative Procedure Act, 5 U.S.C. §§ 552 and 553, and the Fourth and Fifth Amendments * * *." The district court denied Bay the opportunity to file any counterclaim on the ground that "[t]o allow a counterclaim would further delay enforcement of an already much-delayed subpoena" (App. 174). We find no abuse of the district court's discretion, since anything germane to the enforcement proceedings was in the record and considered by the district court in ruling on Bay's motion to dismiss. If Bay has meritorious grounds for a counterclaim, they are best saved for trial of the underlying discrimination charges, should there be one. See *National Labor Relations Board v. Interstate Dress Carriers, Inc.,* 610 F.2d 99, 106–107 (3d Cir. 1979); *National Labor Relations Board v. Dutch Boy, Inc., Glow Lite Div.,* 606 F.2d 929, 931–932 (10th Cir. 1979).

One court has permitted the filing of a counterclaim in order to contest release of the requested information to the charging

party should the subpoena be enforced. *EEOC v. University of Pittsburgh,* 487 F.Supp. 1071, 1077–1078 (W.D.Pa.1980), affirmed, 643 F.2d 983, 986 (3d Cir. 1981), certiorari denied, —— U.S. ——, 102 S.Ct. 362, 70 L.Ed.2d 190. That particular issue is now authoritatively settled so that a counterclaim regarding it would be unavailing, *EEOC v. Associated Dry Goods Corp.,* 449 U.S. 590, 101 S.Ct. 817, 66 L.Ed.2d 762 (subpoenaed information may be released to charging parties pursuant to 29 C.F.R. § 1601.22); *Burlington Northern, Inc. v. EEOC,* 582 F.2d 1097 (7th Cir. 1978), certiorari denied, 440 U.S. 930, 99 S.Ct. 1267, 59 L.Ed.2d 486, and in any event Bay's proposed counterclaim did not portend to contest the EEOC's proposed handling of the requested information.

### No Evidentiary Hearing or Oral Argument Was Required.

■ The district court resolved this controversy upon the record before it without an evidentiary hearing or oral argument. This was permissible because the motion to dismiss and supporting briefs evinced only questions of law. Moreover, Rule 78 of the Federal Rules of Civil Procedure reiterates the inherent power of a trial court to dispense with oral hearings by providing in part:

> To expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition.

This was the course chosen by Judge Evans, and it was also authorized by the Rules of the United States District Court for the Eastern District of Wisconsin dealing with motion practice. Thus Rule 6 of the local rules provides that a motion shall be accompanied as necessary by briefs and affidavits,

---

**6.** The investigatory powers of 29 U.S.C. § 161 at issue in *Goodyear Tire & Rubber* originally belonged to the National Labor Relations Board, and as we have already twice noted were subsequently made available to the EEOC in a 1972 amendment to 42 U.S.C. § 2000e–9. By that amendment Congress obviously intend-

ed the EEOC powers to be construed in light of prior interpretations of the Labor Board's powers. Cf. Letter from W. Brown to J. Dent, reprinted in [1972] U.S.Code Cong. & Ad.News 2137, 2141–2143 (using Labor Board data regarding general enforcement costs to project EEOC funding needs).

but that "[e]ach judge shall follow his own practice with respect to the affording of oral argument." This rule was sustained in *Butterman v. Walston & Co.*, 50 F.R.D. 189 (E.D.Wis.1970), and a comparable rule adopted by the United States District Court for the Northern District of Illinois was sustained by this Court in *United States ex rel. Bibbs v. Twomey*, 538 F.2d 151, 153–154 (7th Cir. 1976), certiorari denied, 429 U.S. 1102, 97 S.Ct. 1126, 51 L.Ed.2d 551. The great discretion afforded by motion rules is appropriate when regulating the form of opposition to subpoena enforcement because, as decided in *Goodyear Tire* and like cases, subpoena enforcement is meant to be a summary proceeding.

■ Bay's due process rights under the Fifth Amendment were not abrogated by the failure to hold an adversarial hearing for three reasons. First, Bay was given ample opportunity to oppose the application to enforce the subpoena and yet in its filings chose merely to contend that the EEOC application was not a complaint and therefore supposedly improper under the Federal Rules of Civil Procedure, and that the application did not allege the three prerequisites mentioned in *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 368, 94 L.Ed. 401.[7] If Bay had stronger objections to enforcement of the subpoena, it should have presented them at once to the district court rather than waste judicial patience with its formalistic arguments. An opportunity squandered does not make out a due process claim.

Second, Bay's objections to enforcement were contained in its administrative petition to revoke the subpoena and were rejected by the EEOC's Milwaukee District Office on behalf of the Commission in a well-reasoned "determination" (App. 74–88). Those objections were again administratively considered in Bay's appeal to the Commission's general counsel. That appeal consisted of a renewal of the same fifteen objections Bay had previously raised, and

the general counsel rejected the appeal because the Milwaukee District Office Director's determination "completely and accurately disputed [Bay's] contentions and set forth applicable status [sic], rules, and case law" (App. 121). Accordingly, the EEOC twice rejected Bay's fifteen objections to the subpoena after it had been afforded an opportunity to present its objections.

It is immaterial that the procedural opportunities sought by Bay were available primarily before the EEOC. By 29 U.S.C. § 161(1), Congress gave the EEOC the power to revoke a subpoena "if in its opinion" the requested evidence is not relevant or described with sufficient particularity, while providing no special inquiry for the courts in enforcing the subpoena (29 U.S.C. § 161(2); see notes 4 and 5 *supra*). Combined with the judicial scrutiny afforded by Judge Evans to assure that the EEOC did not clearly abuse its broad investigatory powers, the double agency review of Bay's objections constituted all the process required by the Fifth Amendment.

Finally, before denying the motion to dismiss and enforcing the subpoena, the district court reviewed all of the objections Bay stated it would have raised had it been allowed an oral hearing. All of these objections were contained among or pertained to those that Bay had presented in its petitions before the EEOC. Judge Evans' opinion specifically dealt with the non-frivolous objections in accord with the administrative rulings. His review of the amended charge and the subpoena enabled the court to rule, among other things, that (1) the investigation was within the agency's authority, (2) the subpoena was not too indefinite, and (3) the information sought was reasonably relevant, all as required by *Morton Salt, supra.* This review was sufficient, for agency subpoena enforcement proceedings are "of a summary nature not requiring the issuance of process, hearing, findings of fact, and the

---

7. Those prerequisites were: The subpoena was issued pursuant to an investigation within the lawful authority of plaintiff, was not indefinite, and requested relevant information. The Court

in *Morton Salt* did not hold that the subpoena itself (order of compliance reports there) must allege its satisfaction of these prerequisites.

elaborate process of a civil suit." *Goodyear Tire & Rubber Co. v. National Labor Relations Board, supra,* 122 F.2d at 451. In an EEOC subpoena enforcement proceeding like this one involving no disputed questions of fact, no evidentiary hearing is required by the due process clause. *EEOC v. Quick Shop Markets, Inc.,* 526 F.2d 802, 803 (8th Cir. 1975). Bay did not file any affidavits before the EEOC or in the district court demonstrating a material factual dispute. Therefore there was no need for the district court to delay the proceedings further by permitting Bay still another opportunity to respond.

Bay relies on *United States v. Kis,* 658 F.2d 526 (7th Cir. 1981) in an effort to show that the district court was required to allow further answers and accord a judicial hearing. However, that case involved Internal Revenue Service tax summons proceedings which are sometimes brought for the improper purpose of obtaining evidence for use in a criminal proceeding. We held in *Kis* that a taxpayer is not entitled to an evidentiary hearing unless he shows facts demonstrating wrongful conduct by the Government. 658 F.2d at 540. Since no such showing was made by Bay and the affidavit and exhibits submitted with the application for enforcement show no abuse of process (App. 29–124), no adversarial hearing was required here. *Id.* As concluded in *Kis,* "If the [respondent] has not alleged specific facts that permit an inference of some improper purpose on the part of the Government, the district court should promptly order enforcement of the summons." 658 F.2d at 544. As similarly held in *National Labor Relations Board v. Interstate Dress Carriers, Inc., supra,* 610 F.2d at 112, unless the subpoenaed party comes "forward with facts suggesting that the subpoena is intended solely to serve purposes outside the purview of the jurisdiction of the issuing agency," the district court "should, in a § 11(2) enforcement case [like

this one], act summarily." Because Bay has not shown that the EEOC investigation was undertaken for an ulterior purpose, Judge Evans was empowered to act summarily.

### Other Objections to the Subpoena Were Properly Overruled.

■ Bay additionally argues that the subpoena should not be enforced in view of supposed deficiencies in Keller's amended charge. However, such deficiencies are immaterial because the scope of the EEOC investigation is permissible even without the amendment. The initial charge alleged that Ms. Keller and other women were denied access into Bay's electrical department and electrical training/apprenticeship program because of their sex (App. 48). Such a charge authorized the EEOC to investigate "any employer practice which may shed light on the discrimination charged." *EEOC v. Cambridge Tile Manufacturing Co.,* 590 F.2d 205, 206 (6th Cir. 1979); *Motorola v. McLain,* 484 F.2d 1339, 1345 (7th Cir. 1973), certiorari denied, 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 287.[8] For example, Bay challenges as irrelevant the EEOC's request for information regarding the company's advertisements and help-wanted ads. However, an employer's method of recruitment and job advertisement may serve to determine whether the employer has discriminated against women in hiring for positions in the electrical department, thereby discouraging women already employed from applying or transferring to those positions.

■ Moreover, the amendment of the charge was proper and conformed to EEOC regulations (29 C.F.R. § 1601.12(b)) because its purpose was "to clarify and amplify allegations" made in the original charge. The 1979 amendment of the charge was carried out in accordance with the EEOC's ELI program, discussed above. Although Bay asserts that the amended charge and subpoena are invalid because the adoption

---

8. The courts uniformly uphold the relevancy of EEOC subpoenas seeking information about discrimination not specifically alleged in the charge. See, *e.g., EEOC v. University of Pittsburgh, supra,* 487 F.Supp. at 1075–1076, 643 F.2d at 985–986; *EEOC v. University of New Mexico,* 504 F.2d 1296, 1299–1302 (10th Cir. 1974); *Blue Bell Boots, Inc. v. EEOC,* 418 F.2d 355, 358 (6th Cir. 1969).

of the ELI program was not published in the Federal Register, the program deals with EEOC internal procedures and does not determine rights or obligations of parties before it. Thus the statements of policy contained in the ELI program are excepted from publication requirements (5 U.S.C. § 553(b)(A)). Furthermore, since the scope of the investigation has not exceeded what is permissible under the original charge, Bay has not been "adversely affected" by adoption of the program within 5 U.S.C. § 552(a)(1) and therefore has no standing at this time to complain about non-publication.

■ Bay also contends that the subpoena is over-broad because it seeks supposedly confidential information concerning management and executive employees. But, as held in *EEOC v. University of New Mexico, supra*, 504 F.2d at 1303, confidentiality is no excuse for noncompliance since Title VII imposes criminal penalties for EEOC personnel who publicize information obtained in the course of investigating charges of employment discrimination. 42 U.S.C. §§ 2000e–5(b), 2000e–8(e).[9]

■ Bay next attacks the charge as vague, but the original and amended charges set forth exactly what company practices are believed to be discriminatory against women. By repetition of the original charge, the amendment shows that the charging party believed that the discriminatory practices existed at both the time of the amendment and the time of the original charge and were continuing. Since the

original charge alleged specific acts of refusing to allow women into craft-training programs in December 1977, February 1978, and May 1978, and the amended charge was dated July 11, 1979, Judge Evans properly overruled the vagueness defense. While *EEOC v. Dean Witter Co., Inc.*, 643 F.2d 1334 (9th Cir. 1980), states that Title VII requires the pleading of a specific beginning date for each alleged discriminatory practice, it is the only court so to hold.[10] In any event, *Dean Witter* is distinguishable because the original charge does allege specific dates on which the charging party believed that discriminatory activities first took effect and the amendment, fairly read, relates back, bringing the allegations up to its July 11, 1979, date and continuing thereafter.

■ Citing *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305, and two earlier cases, Bay argues that the EEOC can procure information from it only "by warrant, or, in the alternative, upon a showing of administrative probable cause" (Br. 26). This argument is without merit because even *Barlow's* states that a federal agency's (OSHA there) entitlement to inspect "would not depend on * * * demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises." 436 U.S. at 320, 98 S.Ct. at 1824. Indeed the whole purpose of this EEOC investigation is to determine whether probable cause exists. See *Graniteville Co. v. EEOC*, 438 F.2d 32, 36 (4th Cir. 1971). To paraphrase *United States v. Powell*, 379 U.S. 48, 51, 85 S.Ct. 248, 251, 13 L.Ed.2d

---

**9.** Section 2000e–8(e) provides in part:

It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information.

Assuming that this Section protects information only until institution of proceedings (see 29 C.F.R. § 1601.11 (1981)), Bay could at that point move for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure. See *EEOC v. University of Pittsburgh, supra*, 487 F.Supp. at 1078.

**10.** To the contrary, see *General Employment Enterprises, Inc. v. EEOC*, 440 F.2d 783, 783–784 (7th Cir. 1971); *Graniteville Co. v. EEOC*, 438 F.2d 32, 37–39 (4th Cir. 1971); *International Brotherhood of Electrical Workers, Local Union No. 5 v. EEOC*, 398 F.2d 248, 252 (3rd Cir. 1968); *New Orleans Public Service, Inc. v. Brown*, 507 F.2d 160, 162–164 (5th Cir. 1975); *Sparton Southwest, Inc. v. EEOC*, 461 F.2d 1055, 1058–1060 (10th Cir. 1972) (*en banc*); *Bowaters Southern Paper Corp. v. EEOC*, 428 F.2d 799 (6th Cir. 1970), certiorari denied, 400 U.S. 942, 91 S.Ct. 241, 27 L.Ed.2d 246. See also *Occidental Life Insurance Co. v. EEOC*, 432 U.S. 355, 372–373, 97 S.Ct. 2447, 2457, 53 L.Ed.2d 402.

112, we hold that the EEOC need make no showing of probable cause to suspect a violation of Title VII unless the employer raises a substantial question that judicial enforcement of the administrative subpoena would be an abusive use of the court's process. See *EEOC v. University of New Mexico, supra,* 504 F.2d at 1303; *Food Town Stores, Inc. v. EEOC,* 25 EPD (CCH) ¶ 31,489 at 18,958 (M.D.N.C.1980). There was no such showing here.

The company urges too that the EEOC has no authority to require it to compile information. This hoary point has already been correctly rejected in other EEOC cases. *New Orleans Public Service, Inc. v. Brown,* 507 F.2d 160, 165 (5th Cir. 1975); *Motorola v. McLain,* 484 F.2d 1339, 1346 (7th Cir. 1973), certiorari denied, 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 287.

■ Finally, Bay opposes enforcement of the subpoena on the ground that it is unduly burdensome. An identical argument has routinely been rejected in EEOC and related cases [11] unless compliance would threaten the normal operation of a respondent's business; there has been no such showing here. If a respondent lacks the information necessary to respond to part of a subpoena, of course it would be excused *pro tanto. H. Kessler & Co. v. EEOC,* 53 F.R.D. 330, 336 (N.D.Ga.1971), modified on other grounds, 472 F.2d 1147 (5th Cir. 1973), certiorari denied, 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 398. Again Bay has made no such showing. Bay had ample opportunity to demonstrate before the EEOC that it would be unduly burdened by the subpoena, but in its petition to revoke the subpoena and its administrative appeal from the adverse ruling of the EEOC's District Office it did not show how the subpoena might be unduly burdensome nor did it present any affidavits to support its conclusionary assertion to that effect. Similarly, in its motion to dismiss and supporting briefs it did not demonstrate to the district court why it would be unduly burdened by the subpoena. Therefore Judge Evans was justified in holding that the requests made in the subpoena were not unduly burdensome.

In denying a stay to Bay Shipbuilding, the district judge commented that Bay had already "stalled off the subpoena for one year" (Record Item 17). Further delays should not be sanctioned. Therefore the judgment is affirmed, the stay is dissolved, and our mandate is to issue forthwith.[12]

### APPENDIX A

1. Supply a copy of your EEO–1 Reports for the period 1975 to the present. Also, identify each of the specific job positions in the various broad EEO–1 categories, such as operatives, technicians, etc.

2. Submit a list of all your current employees and identify each by:
   a. name,
   b. address,
   c. sex,
   d. department,
   e. job classification or title,
   f. date of hire,
   g. starting salary,
   h. current salary, and
   i. if employee was ever transferred during employment, state the position(s) he/she was transferred from/to and state date of transfer(s).

3. For each specific job position identified in Number 1, which should include, but not be limited to, the position of electrician, pipe-fitter, welder, carpenter, painter, hook-

---

**11.** *Bradley Lumber Co. v. NLRB,* 84 F.2d 97 (5th Cir. 1936), certiorari denied, 299 U.S. 559, 57 S.Ct. 21, 81 L.Ed. 411; *New Orleans Public Service, Inc. v. Brown, supra,* 507 F.2d at 165; *F. T. C. v. Rockefeller,* 591 F.2d 182, 191 (2nd Cir. 1979); *Circle K. Corp. v. EEOC,* 501 F.2d 1052, 1055 (10th Cir. 1974); *EEOC v. United States Fidelity and Guaranty Co.,* 414 F.Supp. 227, 244 (D.Md.), affirmed, 538 F.2d 324 (4th Cir. 1976); *EEOC v. University of Pittsburgh, supra,* 487 F.Supp. at 1077; *Cameron Iron Works, Inc. v. EEOC,* 320 F.Supp. 1191, 1194 (S.D.Tex.1971).

**12.** Other arguments of respondent have been considered by the Court but do not merit discussion.

ing, etc., state the entry level requirements, such as high school diploma or any specialized training or experience, an applicant must have in order to qualify for said position.

4. State what training and/or experience is necessary for the employee to progress to the next higher position within the same job classification.

5. Provide the following information on the vacancies your organization sought to fill by new hires for the period January 1, 1975 to the present.

    a. the job title for each job classification for which there was a vacancy,

    b. the number of vacancies related to each job title, and

    c. if any of the positions were considered to be skilled or professional (i.e., requiring that the person hired have significant skills or training when hired, and not obtainable on the job by incidental orientation or instruction), supply a copy of or prepare and supply a description of each skilled or professional position.

6. For each vacancy listed in Number 5(a) state:

    a. name,

    b. sex,

    c. address of all persons who applied for said vacancy,

    d. the reason why applicant who filled the vacancy was hired,

    e. the reason why all other applicants were not hired,

    f. submit copies of all applications for each of the persons identified in d and e above.

7. Name the positions formally advertised in newspapers, magazines, journals, radio, television, distribution of pamphlets, or other media during the period 1975 to the present; supply the following for each instance:

    a. name of each magazine, newspaper, or other recruiting source used,

    b. a copy of each advertisement published, pamphlet used, or radio or television script, and

    c. the date or inclusive dates of each advertisement.

8. For the period 1975 to the present, specify the numbers of applications received by mail and from walk-ins for vacancies in each of the departments mentioned in Question Number 3.

9. Specify the geographical area from which your recruiting and hiring is conducted.

10. Does your company use any applicant screening process? If so, are all applicants screened? If all applicants are not screened, what criteria are used to determine which applicants will be screened? Include name, sex, position and qualifications of person or persons who determine which applicants will be screened.

11. Are applications given to all persons who attempt to apply? If not, indicate by whom (identifying job title, name and sex for each person) the determination is made as to which applicants are given applications and which are not. Specify what factors are considered in making such determinations.

12. Submit a statement or copies of documents which set forth methods of applicant processing. Information should include but not be limited to, at what stage of the hiring process and by whom hiring decisions are made. Under what circumstances are reference checks and interviews required and made?

13. Identify each female that was employed in the positions named in Question Number 3, above for the period January 1975 to the present.

14. Identify all training programs conducted by your company from January 1975 to the present, the job position for which they were conducted for, and the requisite skills necessary to get into such training programs.

15. With regard to the above training programs, identify by name, sex and date of entry, those persons that gained entry into these programs from January 1975 to the present.

16. For the job positions identified in Question Number 3 identify the foreman of the department by name and sex. Further, indicate who has control over the hiring and transferring of persons into the departments.

17. Identify all employees transferred within the company from January 1975 to the present, position transferred from [and] the position transferred into, and the date such transfer was effectuated.

18. If any of the above questions have been answered before, state when it was answered, who provided the answer, and to whom in EEOC the answer was made.

19. Please make available for review personnel records of all employees employed in skilled yard positions from January 1975 to the present. Also, make available for review the personnel files of all employees admitted in all training and apprenticeship programs offered by Bay Shipbuilding Corporation.

20. Supply all collective bargaining agreements between Bay Shipbuilding Corporation and the unions associated with you from January 1975 to the present.

## APPENDIX B

1. The subpoena requests information allegedly related to the July 11, 1979 amended charge of discrimination. This amendment, which substantially expanded the scope of the original charge, was initiated by Commission agents under the purported authority of the ELI (Early Litigation Identification) Program. The subpoena, therefore, is illegal for the following reasons:

A. The amendment, the procedure followed in effectuating the amendment, and the investigation resulting from the amendment, violate Respondent's Fourth and Fifth Amendment, and common law, rights to due process of law, equal protection of the laws, and administrative search and investigation pursuant to authority of a warrant or as a result of good and sufficient cause.

B. The amendment was made without authority of law and in violation of the procedures authorized and intended by Congress, Title VII and the Commission's regulations. For example, see 29 C.F.R. §§ 1601.6, 1601.7, 1601.11 and 1601.12.

C. The ELI Program has not been promulgated pursuant to the Administrative Procedure Act, nor has the ELI Program been promulgated in a manner so as to afford Respondent the minimal safeguards, due process and otherwise, required by the Constitution and the common law.

2. Respondent was not formally notified upon amendment of the charge that the Commission's investigation was being conducted pursuant to the ELI program.

3. The reasons for the Commission's amendment of the charge have not been disclosed to, and have been illegally withheld from, Respondent in violation of Respondent's due process rights.

4. The amended charge is vague; further, the Commission has refused to define the scope or purpose of its investigation and has, thus, jeopardized Respondent's ability to defend itself. For example, see EEOC Compliance Manual § 22.3.

5. The amended charge is illegal because it exceeds the scope and intent of the original charge. Further, the investigation and information requested exceed the permissible scope of an ELI investigation.

6. The amended charge is untimely.

7. The Commission is without authority to require the compilation of information requested by the subpoena and may only require the production of specifically identified documents or oral testimony of witnesses.

8. The request is unreasonably burdensome, vexatious and oppressive and impossible to comply with within the time permitted.

9. The information requested is irrelevant and immaterial and beyond the scope of the original and amended charges.

10. The subpoena seeks information for a time period which is barred from consid-

eration by the statute of limitations, laches, and the Commission's bad faith and delay in conducting the investigation herein.

11. Some of the information requested, such as EEO–1 reports, is already in the possession of the Commission and is, thus, duplicative and readily available to the Commission.

12. The subpoena requests confidential information relating to executives and other employees beyond the scope of the original and amended charges.

13. The Commission, having initiated the amendment to the original charge, is biased or otherwise incapable of investigating the amended charge in a manner which affords Respondent its due process right to an impartial investigation.

14. The procedure for challenging the subpoena herein is unconstitutional because it denies Respondent the right to present evidence before the Commission and to be heard upon the issues raised herein.

15. The subpoena is invalid for failure to attach witness and other fees.

PELL, Circuit Judge, dissenting.

It appears to me under elementary principles of procedural due process that the district court should have permitted the respondent the opportunity to have a hearing on the issues it raised. I therefore respectfully dissent.

Because of the hybrid nature of the EEOC Application for Enforcement filed in the district court, the respondent filed a motion under Rule 12 of the Federal Rules of Civil Procedure requesting direction as to whether it should respond to the EEOC Application as if it were a complaint or a motion. EEOC responded in part:

Although the application is not a motion as defined under the Federal Rules of Civil Procedure, due to its special summary nature, subpoena enforcement actions can and are judicially treated like a "motion," that is, applications are generally decided on the pleadings and, if necessary, after a hearing has been held.

In addressing the respondent's contention that the proceedings should be in the nature of ordinary civil pleadings, the EEOC, relying upon *United States v. Gajewski*, 419 F.2d 1088 (8th Cir. 1969), *cert. denied*, 397 U.S. 1040, 90 S.Ct. 1361, 25 L.Ed.2d 651 (1970), quoted from that case regarding the thrust of earlier cases, in the analogous area of the enforcement of subpoenas in tax cases, as being "to insure that a taxpayer obtain an adversary-type hearing in the district court prior to his being forced to comply with an administrative summons which he challenges in good faith." 419 F.2d at 1092 (quoting *McGarry's Inc. v. Rose*, 344 F.2d 416, 418 (1st Cir. 1965)).

EEOC then concluded its response by requesting that the respondent's motion to dismiss be denied "and that an immediate hearing be set on Plaintiff's application for subpoena enforcement." No hearing, however, was ever held. Instead, the district court granted enforcement apparently, in part at least, on the basis that this would take too much time and that respondent's motion was made for delay. It seems to me that one of the essential characteristics of due process is an opportunity for a proper development of a position or, putting it another way, I am unaware that on a balancing of granting some time for development against the right to be heard the latter should come out in second place. As to delay, I do not believe the record supports this premise. Indeed, the respondent candidly recognizes that delay will inevitably harm its ability to defend itself. The respondent asserts that it cooperated without hesitation with the EEOC during the first 18 months of the investigation. Interestingly enough, although the respondent was not given the opportunity to present evidence of this cooperation to the district court, the district court stated it was relying on the record of the proceedings before the EEOC, but there were no evidentiary proceedings before the EEOC, nor were any due process hearings conducted.

Indeed, the dilatoriness might more properly have been ascribed to the EEOC. When the matter was pending before Chief Judge Reynolds, on the action for an in-

junction, he found that the Commission had barely begun its investigation. *EEOC v. Bay Shipbuilding Corporation*, 480 F.Supp. 925, 928 (E.D.Wis.1979). Judge Reynolds, as a matter of fact, orally expressed shock that the EEOC had come into court and asked "for a preliminary injunction when nothing has been done." Thirteen days later, the EEOC sent a questionnaire to respondent requesting voluminous information, of which more later. For the first time since the commencement of the investigation, respondent objected to providing the requested information. The issuance of the subpoena followed in a couple of months, with the Application for Enforcement being filed on July 2, 1980.

The majority opinion in referring to the summary nature of an enforcement proceeding of this sort, quotes from *Goodyear Tire & Rubber Co. v. NLRB*, 122 F.2d at 451. The court there, however, was referring to a mere incident in a case. There is no case here and there may never be one as the majority opinion recognizes when it tells the respondent to save its grounds for a counterclaim for the trial of the underlying discrimination charges, "should there be one." While we may well agree with *Goodyear* that an enforcement proceeding does not require "all of the formalities of a civil suit," I do not think we, on the other hand, should equate "summary" with no opportunity whatsoever to present a case.

In my view, the most egregious aspect of the present case is the almost unlimited scope of the subpoena which the EEOC with bureaucratic blitheness seeks to impose on this industry. The respondent asserts that had it been given the opportunity, it would have demonstrated to the district court that the subpoena requests the production of thousands of documents, as well as the compilation of countless more pieces of information which are not contained in corporate records; and that the respondent would be required to do extended research, including interviewing numerous employees, an effort which would involve hundreds of hours of work. One need do no more than read Appendix A of the majority opinion to realize that the respondent has expressed no idle fear.

In sum, it appears to me at the very least that the appropriate disposition of this appeal would be to remand to the district court for further proceedings in the nature of a show cause hearing.