**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Applicant,**

v.

**QUAD/GRAPHICS, INC., Respondent.**

**No. 94–MISC–42.**

United States District Court, E.D. Wisconsin.

Nov. 1, 1994.

Jeanette Goss, EEOC, Milwaukee Dist. Office, Milwaukee, WI, for applicant.

Michael, Best & Friedrich by Thomas Scrivner, Milwaukee, WI, for respondent.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

On July 20, 1994, the applicant, Equal Employment Opportunity Commission ["EEOC"], filed an application seeking en-forcement of an administrative subpoena. The EEOC seeks an order requiring the respondent, Quad/Graphics, Inc., "to comply with a subpoena issued and duly served by the EEOC."

## I. BACKGROUND

In its application, the EEOC alleges that on November 5, 1993, EEOC Commissioner R. Gaull Silberman filed a charge of discrimination with the EEOC's Milwaukee district office. The EEOC states that the charge alleged that Quad/Graphics had violated and was continuing to violate § 703 of Title VII of the Civil Rights Act of 1964 ["Title VII"] and § 4 of the Age Discrimination in Employment Act ["ADEA"] since at least January 1, 1991. Specifically, the EEOC alleged that Quad/Graphics failed "to recruit and/or hire Asians, Hispanics, and persons over the age of 40 because of their race, national origin and/or age."

The EEOC avers that the charge was served on Quad/Graphics, along with an "initial data request," on November 9, 1993. The applicant states that, pursuant to the initial data request, Quad/Graphics was asked to produce information regarding its recruitment and hiring practices by November 29, 1993. The EEOC alleges that instead of submitting information, Quad/Graphics asked to meet with the EEOC prior to responding to the initial data request.

The EEOC states that a meeting was held on December 14, 1993, between EEOC investigators and representatives of Quad/Graphics to discuss Quad/Graphics' response to the initial data request. A dispute arose between the parties as to the scope of the EEOC's investigation. The EEOC alleges that there was correspondence between the parties from December 15, 1993, to December 28, 1993, discussing the scope of the EEOC's investigation.

The applicant states that, in a letter dated December 28, 1993, Quad/Graphics asserted its refusal to respond to the initial data request. The EEOC avers that, in response to Quad/Graphics letter of December 28, 1993, it issued a subpoena on December 28, 1993, requiring responses to the initial data re-

quest. The EEOC claims that the subpoena was served on Quad/Graphics on December 29, 1993, and Quad/Graphics filed a petition to revoke or modify the subpoena on January 5, 1994.

The applicant states that the EEOC's executive secretariat in Washington, D.C., issued a determination on March 4, 1994, which modified the subpoena to specify "that Quad/Graphics was to provide information pertaining to its four southeastern Wisconsin plants only," and directing Quad/Graphics to comply with the determination "forthwith." The EEOC claims that it served a copy of the determination on Quad/Graphics on March 15, 1994, and requested that the subpoenaed information be produced by March 30, 1994.

The EEOC avers that Quad/Graphics, in further discussions, refused to comply with the subpoena. Consequently, the EEOC filed the present action seeking an order enforcing the subpoena and requiring Quad/Graphics to produce all of the information requested by the EEOC.

## II. ANALYSIS

■ The court of appeals has stated that "an administrative subpoena will be enforced where: (1) the investigation is within the agency's authority, (2) the subpoena is not too indefinite, and (3) the information requested is reasonably relevant." *EEOC v. A.E. Staley Mfg. Co.*, 711 F.2d 780, 783 (7th Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1907, 80 L.Ed.2d 456 (1984) (citation omitted). The EEOC has broad power to investigate violations of Title VII (and also, presumably, the ADEA). *Id.*

The subpoena meets the three prerequisites to enforcement elicited in *A.E. Staley Mfg.* First, the subpoena in this case was issued pursuant to an investigation within the lawful authority of the EEOC. The EEOC is empowered to investigate charges of discrimination on the basis of race and national origin pursuant to 42 U.S.C. §§ 2000e–2(a) and 2000e–5(b). The applicant is empowered to investigate charges of discrimination on the basis of age pursuant to 29 U.S.C. §§ 623 and 626.

Second, the subpoena at issue in this enforcement proceeding is not too indefinite. The subpoena lists in sufficient detail the information requested by the EEOC. The respondent has not made an effort to defend its noncompliance on this basis.

Third, the information requested in the subpoena is relevant to the EEOC's investigation. The charge in this case asserts that the respondent has discriminated against Asians, Hispanics and individuals over the age of 40 through its hiring practices. Information related to the hiring and recruitment of employees over the applicable period is relevant to such an investigation.

In its response to the EEOC's enforcement application, Quad/Graphics does not challenge the EEOC's subpoena on any of the above mentioned grounds. Quad/Graphics instead challenges the validity of the EEOC commissioner's charge. The respondent also asserts that there are substantial indicia of bad faith on the part of the EEOC in this case, and that compliance with the EEOC subpoena would be unduly burdensome.

A court hearing was not held in this matter due to the substantial submissions of both parties. The briefs and affidavits submitted by the parties have provided the court with sufficient information to render a decision. Neither party requested a hearing. Information supplied at a hearing would merely duplicate information already before the court. Therefore, a hearing is considered unnecessary.

### A. Validity of the Charge

■ Quad/Graphics asserts that the EEOC charge in this case is invalid because it does not specify which job classifications are the subject of the investigation. The respondent contends that to allow the EEOC the power to reach as far as it is attempting to reach in this case would render nugatory the limitations on the EEOC's investigative authority.

The Supreme Court has stated that, in order to be valid for enforcement purposes, the commissioner's charge must contain enough information to comply with 29 C.F.R.

§ 1601.12(a)(3). *EEOC v. Shell Oil Co.*, 466 U.S. 54, 73, 104 S.Ct. 1621, 1633, 80 L.Ed.2d 41 (1984). Under § 1601.12(a)(3), which prescribes regulations for the issuance of EEOC charges involving violations of Title VII, the commissioner is obligated to make a "clear and concise statement of the facts ... constituting the alleged unlawful employment practice." Charges brought pursuant to the ADEA must comply with the provisions of 29 C.F.R. § 1626.8. The language of § 1626.8(a)(3) is identical to the language of § 1601.12(a)(3). Therefore, the standard under § 1626.8 will be considered to be the same as the standard under § 1601.12. In *Shell Oil* the Supreme Court stated that the most sensible way to read the directive of § 1601.12(a)(3) is as follows:

Insofar as he is able, the commissioner should identify the groups of persons that he has reason to believe have been discriminated against, the categories of employment positions from which they may have been excluded, the methods by which the discrimination may have been effected, and the periods of time in which he suspects the discrimination to have been practiced.

466 U.S. at 73, 104 S.Ct. at 1633.

■ Quad/Graphics argues that the commissioner's charge must identify the job categories that are the subject of the investigation. The respondent cites *Shell Oil* as support for this proposition. However, contrary to the respondent's assertion, the Supreme Court did not require that the job classifications at issue must be described in the charge in order for the charge to be valid. As quoted above, the Supreme Court stated that "in so far as he is able," the commissioner should identify the categories of employment positions from which he believes persons have been excluded. *Id.* Identification of the job classifications at issue may be preferable, but it is not mandatory.

The charge should contain more than a mere allegation that Title VII has been violated, *Id.* at 72, 104 S.Ct. at 1633, and the charge in this case meets that obligation. The commissioner alleges that the unlawful discriminatory practices that are the subject of the charge include:

Failing to recruit and/or hire Asians, Hispanics, and individuals over the age of 40 because of their race, national origin and/or age.

Additionally, the charge identifies the class of persons who the commissioner believes to have been discriminated against as "all Asians, Hispanics and persons over the age of 40" who have been affected by the respondent's employment practices. The charge also lists the period of time in which the alleged discrimination took place as occurring "since at least 1991." The commissioner further states that the allegations are based on "interviews, testimonial evidence and other information regarding the employer."

In my opinion, the commissioner's charge at issue in this case complies with the regulations governing EEOC charges. The purpose of the regulations is to require the complainant to identify as precisely as possible the conduct complained of. *Shell Oil*, 466 U.S. at 72, 104 S.Ct. at 1633. I believe that the charge in this case is sufficiently precise in identifying the conduct complained of. Furthermore, it would be virtually impossible for the commissioner to identify the job classifications at issue in this action in light of the information contained in the affidavit of Mary Sue Protz, submitted by the respondent. In her affidavit, Ms. Protz states that the respondent "has several thousand job titles" among its 5,059 employees at the four facilities that are involved in the EEOC's investigation.

I find that the commissioner's failure to specify the job classifications at issue in the investigation does not render the charge invalid; the charge sufficiently states the facts constituting the unlawful employment practice.

## B. *Indicia of Bad Faith*

Quad/Graphics next asserts that there are substantial indicia of bad faith on the part of the EEOC. The respondent lists five facts which it asserts constitute evidence of bad faith. Quad/Graphics contends that the EEOC: (1) has made a very broad demand for information, (2) does not have cause to believe that discrimination occurred, (3) has

not filed a valid charge, (4) supplied an erroneous statistical argument as an explanation for its charge and (5) filed the charge in the present case following a Department of Labor audit during which the Department of Labor threatened the respondent with retaliatory action.

■ The respondent's assertion that the EEOC's "broad demand for information" indicates that the EEOC is acting in bad faith is without merit. EEOC subpoenas related to unlawful discrimination often necessarily involve broad requests for information, especially in pattern and practice cases where a large number of employees or applicants may be involved.

■ Second, Quad/Graphics' claim that the EEOC has not filed a valid charge has already been resolved above. Third, the respondent's attempts to challenge the EEOC's statistical argument, and the respondent's assertion that the EEOC does not have cause to believe that unlawful discrimination occurred, are both improper inquiries in an enforcement proceeding. The role of the court in a subpoena enforcement proceeding is very limited. *EEOC v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th Cir.1987) (citation omitted). A subpoena enforcement proceeding is not the appropriate time to litigate the merits of a claim. *EEOC v. Roadway Exp., Inc.*, 750 F.2d 40, 42 (6th Cir.1984).

The EEOC is not required to make a showing of probable cause in an enforcement proceeding. *See EEOC v. Bay Shipbuilding*, 668 F.2d 304, 313 (7th Cir.1981). The purpose of the subpoena is "to determine whether probable cause exists." *A.E. Staley*, 711 F.2d at 786. Therefore, the respondent's argument that the EEOC does not have cause to believe that discrimination occurred is not an argument properly addressed in this enforcement proceeding.

The EEOC is not required to have statistical data to support its charge in an enforcement proceeding. A court is not entitled to determine whether a charge of discrimination is well founded or verifiable in an enforcement proceeding. *University of Pennsylvania v. EEOC*, 493 U.S. 182, 191, 110 S.Ct. 577, 583, 107 L.Ed.2d 571 (1990). Hence it

would be improper for this court to require the EEOC to provide statistical data to verify its charge. If a civil action is filed against Quad/Graphics as a result of the EEOC's investigation, the respondent will then be entitled to challenge the basis for the charge.

■ The final fact that Quad/Graphics asserts is indicative of bad faith involves a claim that the EEOC investigation in this case was instigated at the direction of the Department of Labor. Specifically, the respondent asserts that during the course of a Department of Labor audit of Quad/Graphics, investigators from the Department told the respondent that they "could and would enlist investigators from other government agencies to create problems for the [respondent]." Other than this broad assertion, the respondent has provided no specific evidence linking the EEOC investigation with the threats supposedly made by Department of Labor investigators. I do not agree with the respondent's assertion that the "threats" made by Department of Labor investigators show that the present EEOC investigation was initiated in bad faith.

■ In the absence of specific factual allegations by the respondent that permit an inference of an ulterior purpose on the part of the government, the court should summarily enforce the subpoena. *Bay Shipbuilding*, 668 F.2d at 311. Quad/Graphics has failed to allege any specific facts to show the existence of an improper purpose on the part of the EEOC. The respondent asserts that the EEOC would not require an employee voicing a similar belief to present a " 'smoking gun' memorandum before it would give investigative credence to the employee's belief." Far from a "smoking gun," the respondent's vague allegations of improper motivation are insufficient to support even an inference of bad faith.

### C. Burden of Compliance

■ The respondent argues that compliance with the EEOC subpoena would be unduly burdensome. In support of this argument, Quad/Graphics has submitted the affidavit of Mary Sue Protz, an employee in the respondent's employee services department.

In her affidavit, Ms. Protz estimates that personnel in Quad/Graphics career assistance department would need to spend 203,994 hours compiling information in order to comply with the EEOC subpoena. Based on this estimation, the respondent asserts that compliance with the EEOC subpoena "would be physically impossible, even if months were allowed in which to comply."

■ Compliance with a subpoena request for relevant information should not be excused merely upon a claim that compliance would be "unduly burdensome." *EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir.1993). In order to show that a subpoena is too burdensome, an employer must show that compliance would threaten the normal operation of business. *A.E. Staley Mfg.*, 711 F.2d at 788; *Bay Shipbuilding*, 668 F.2d at 313. The respondent has failed to meet this burden.

■ The EEOC does have the authority to require an employer to compile information that is not in documentary form. *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 478 (4th Cir.1986). Quad/Graphics has not objected on this basis. However, I believe that the time estimate provided by Ms. Protz is a gross exaggeration of the number of hours that Quad/Graphics would need to spend in gathering information to comply with the subpoena. Some examples of her inflation of the number of hours required are set forth below.

Ms. Protz estimates that it will take 2,874 hours to compile the information requested in question 2 of the subpoena. Ms. Protz arrived at this estimate by assuming that 3 hours would be required to gather the information requested in question 2 from "each of the approximately 958 participants in the hiring process." Question 2 of the subpoena is as follows:

2. For each official at each facility who has had responsibility for any part of the recruitment and hiring processes since January 1, 1991 to present, provide the following information:

a. name, race and/or national origin, and date of birth;

b. title, business address and telephone number;

c. description of the area(s) of responsibility and scope of responsibility;

d. time period during which responsibility was exercised; and

e. if no longer employed by the Company, the address and telephone number where the individual can be reached.

The information requested above does not involve the compilation of a massive amount of information on each individual. I doubt that it should require 3 hours to collect such information as to each individual.

It appears that Ms. Protz arrived at her estimate through determining the most inefficient way in which to collect the requested data. Furthermore, Ms. Protz seems to assume that all of the information would need to be gathered by her alone. In light of the fact that much of the information is maintained "at the departmental level," a large portion of the information could be retrieved by personnel within those departments and forwarded to Ms. Protz.

Additionally, in many of Ms. Protz's estimations she assumes that much of the information would need to be gathered through oral interviews. The respondent should not be allowed to avoid compliance merely because it does not have much of the information requested in documentary form. If such were the case, every employer could escape compliance by failing to keep many employment records, submitting an extraordinary time estimate as to the amount of time needed to compile such records, and complaining that compliance would be unduly burdensome.

Quad/Graphics has not met its burden to prove that the compliance would be unduly burdensome. While compliance with the subpoena will certainly involve the expenditure of a significant amount of time compiling the information requested by the EEOC, Quad/Graphics has failed to show that compiling the requested information will threaten its normal business operations.

To gather the information required for compliance, Quad/Graphics must have adequate time to comply with the subpoena.

Ms. Protz has estimated that gathering the information requested in question 10 of the subpoena will require the largest expenditure of time. Specifically, Ms. Protz estimates that 180,990 hours will be required to gather information on each of the 36,188 rejected applicants since January 1, 1991. The EEOC submitted the affidavit of Ruth A. Wagner, in which Ms. Wagner states that the EEOC offered to allow the respondent to stagger its responses to question 10 over an eight week period. I consider an eight week period a reasonable amount of time to allow for compliance with the subpoena; that period will start from the date of this decision and order.

### III. CONCLUSION

I find the respondent's defenses to enforcement of the subpoena to be without merit. I also find that the subpoena complies with the prerequisites to enforcement.

### ORDER

Therefore, IT IS ORDERED that Quad/Graphics be and hereby is directed to comply with the EEOC subpoena.

IT IS FURTHER ORDERED that Quad/Graphics supply the EEOC with the requested information within eight weeks of the date of this decision and order.

Dated at Milwaukee, Wisconsin, this 1st day of November, 1994.