**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Applicant–Appellee,**

v.

**SUPERIOR TEMPORARY SERVICES, INC., Respondent–Appellant.**

**No. 776, Docket 94–6141.**

United States Court of Appeals, Second Circuit.

Argued Dec. 7, 1994.

Decided June 2, 1995.

John F. Suhre, Washington, DC (James R. Neely, Jr., Deputy Gen. Counsel, Gwendolyn Young Reams, Associate Gen. Counsel, Vincent J. Blackwood, Assistant Gen. Counsel, Samuel A. Marcosson, E.E.O.C., Washington, DC, on the brief), for applicant-appellee.

Basil Tzetzo, Buffalo, NY, for respondent-appellant.

Before: KEARSE and WINTER, Circuit Judges, and OWEN, District Judge *.

KEARSE, Circuit Judge:

Respondent Superior Temporary Services, Inc. ("Superior" or the "Company"), appeals from a judgment of the United States District Court for the Western District of New York, Richard J. Arcara, *Judge,* enforcing an administrative subpoena duces tecum issued by the Equal Employment Opportunity Commission ("EEOC" or "Commission") to investigate a charge of discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1988) ("Title VII"). On appeal, Superior contends principally that the district court lacked jurisdiction to enforce the subpoena because EEOC did not comply with the statute or with agency regulations. For the reasons below, we affirm.

## I. BACKGROUND

Superior is an employment service which supplies workers, primarily for clerical and light industrial positions, to other companies on a temporary basis. On September 16, 1992, pursuant to § 707(e) of Title VII, 42 U.S.C. § 2000e–6(e), EEOC Commissioner Joy Cherian issued a written and sworn "Commissioner's Charge" (the "Charge") of unlawful gender discrimination addressed to Superior at its Williamsville, New York address. The Charge stated the Commissioner's belief that Superior,

since at least February 7, 1990, has violated and continues to violate Section 703 of Title VII of the Civil Rights Act of 1964, as amended, by discriminating against persons because of their sex.

Specifically, the unlawful discriminatory practices include, but are not limited to:

1. Classifying and/or referring employees and applicants for employment in a way that deprives or tends to deprive them of employment opportunities or otherwise adversely affects their status as employees, because of their sex.

2. Failing and/or refusing to refer for employment or otherwise discriminating against individuals on the basis of their sex.

The persons aggrieved include all individuals who are, have been, or may in the future be affected by the unlawful employment practices complained of herein.

The Charge stated that it "pertains to all of Superior Temporary Services, Inc. facilities in New York."

The Charge was filed by the Commission with its New York District Office on September 23, 1992, and docketed as Charge No. 160–92–3151; that office forwarded a copy of the Charge to Superior on October 1, 1992, along with a Notice of Charge of Discrimination, and an Initial Data Request seeking information relevant to the Charge. All of these documents identified Superior as the company alleged to have engaged in gender discrimination. An accompanying letter from the District Office dated October 2, 1992, addressed to Superior, referenced "Charge No. 160–92–3151, Commissioner Joy Cherian vs. Superior Temporary Services, Inc.," and stated that a copy of the Commissioner's Charge was enclosed. The second and third paragraphs of the cover letter, however, mistakenly referred, respectively, to a different company and to classifications based on race and national origin.

Superior refused to produce any information, stating that the Data Request was ineffective because it was untimely and duplicat-

---

* Honorable Richard Owen, of the United States District Court for the Southern District of New York, sitting by designation.

ed a prior subpoena with which Superior had fully complied, issued with respect to conditions that had been remedied. Thus, in a letter from its counsel, Superior stated that a subpoena had been issued by EEOC's Buffalo, New York office in 1991 for access to the books and records at the Company's Buffalo office, and that "[t]he only things that caused any concern" were "two 'de minimus' [*sic*] type situations which were promptly discontinued." (Letter from Basil Tzetzo, Esq., to EEOC dated October 26, 1992, at 1.)

In fact, however, the 1991 subpoena referred to in Superior's letter related to a charge alleging only age discrimination by Superior's Buffalo office in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (1988) ("ADEA"). Thus, EEOC, which had informed Superior in April 1992 that it had terminated the ADEA investigation after finding no violation, responded that the current Charge is different. The Commission pointed out that the current Charge alleges violations of Title VII, not the ADEA; that it covers all of Superior's New York facilities, not just its Buffalo office; and that it alleges ongoing violations between 1990 and the present, not just in 1991. The Commission expressed its willingness to work with Superior to avoid any unnecessary duplication of the 1991 investigation. Superior refused to comply with the Data Request.

In November 1992, EEOC issued the administrative subpoena duces tecum at issue here (the "Subpoena") for the requested documents. In December 1992, Superior petitioned EEOC to revoke or modify the Subpoena; the Commission denied the petition and informed Superior of that decision on April 2, 1993. Superior persisted in its refusal to produce the requested documents, and in August 1993 EEOC applied to the district court for enforcement of the Subpoena. In opposition, Superior argued that the district court lacked jurisdiction to enforce the Subpoena, contending principally (a) that EEOC had failed to notify and defer to the appropriate state agency as required by § 706(d) of Title VII, 42 U.S.C. § 2000e–5(d), (b) that the Charge gave Superior inadequate notice, (c) that the Charge was untimely because it was filed more than 300 days after

the conduct that was investigated in 1991, and (d) that the Commission was guilty of laches in seeking enforcement. Superior also submitted an affidavit from the manager of its Buffalo and Rochester, New York offices stating that the Company's history would not support a finding of a pattern or practice of discrimination because there were very few instances of its having filled job orders on an impermissibly restrictive basis "except where the customer-client has claimed a bona fide occupational reason." (Affidavit of Carol Riley, dated March 8, 1994 ("Riley Aff."), ¶ 11.) The affidavit stated, *inter alia,* that "[t]he only instance of any substance" of gender discrimination in Superior's history was one in which a customer-client claimed that women were better able to do small assembly and packaging work (*id.* ¶ 13); that "[a]ll of these events" were isolated events that had been corrected by the company (*id.* ¶ 14); and that "[e]xcept for those few events that occurred several years ago, [Superior] has never[ ] recruited, qualified, assigned, nor promoted or demoted or terminated personnel on the basis of sex" (*id.* ¶ 18).

As to Superior's first procedural contention, the Commission replied, *inter alia,* that the New York State Division of Human Rights ("NYSDHR") had been notified of the Charge and that under the Commission's work-sharing agreement with NYSDHR, NYSDHR does not request an opportunity to act on charges filed by a Commissioner. As to the allegedly inadequate notice, the Commission pointed out that although the District Office's cover letter had in one place mistakenly mentioned another company instead of Superior, Superior had been sent the Charge itself and a Notice of Charge, neither of which left any room for doubt that Superior was the target of the inquiry. The Commission also argued that the Charge was timely because it alleged an ongoing violation, and that the Commission had been proceeding with all reasonable dispatch.

In a ruling from the bench on April 29, 1994, the district court rejected Superior's arguments and granted EEOC's application, ordering Superior to comply with the Subpoena. It found that EEOC had properly notified NYSDHR of the charges against

Superior and concluded that, in light of that notice and the work-sharing agreement, § 706(d) had been satisfied. It also found that the Charge was timely because it alleged a continuing violation.

As to the adequacy of the notice given to Superior, the court found that

> [t]he charge sets forth the alleged discriminatory practices and the allegation that those practices are directed against individuals based on their sex. It sets forth that discriminatory practices include failing and/or refusing to refer persons for employment based on their sex; and sets forth the relevant time frame involved.

(Hearing Transcript, April 29, 1994 ("Tr."), at 47.) The court concluded that "[t]he charge provides Superior fair notice of the existence and the nature of the charges against it." (*Id.*) The court rejected the Company's claim that the October 2 cover letter's inadvertent references to allegations of race and national origin discrimination by a different company made the notice to Superior inadequate. It also rejected the contention that EEOC was required to provide Superior with additional information:

> EEOC is simply attempting to investigate a charge that Superior has been engaged in ongoing employment practices which violate [T]itle VII.... This investigation is at the most preliminary of stages, and has effectively been kept there by the actions of Superior.

(Tr. at 48–49.)

An order and a judgment were entered granting EEOC's motion to enforce the Subpoena; this appeal followed.

## II. DISCUSSION

On appeal, Superior argues, *inter alia,* that enforcement of the Subpoena should have been denied on the ground that the pertinent documents failed to specify the factual circumstances on which the Charge was based. We conclude that adequate notice was given.

### A. *The Adequacy of Notice of the Charge*

To the extent pertinent here, § 703(a) of Title VII makes it unlawful for an employer, as defined in the statute, to discriminate against any individual with respect to the terms, conditions, or privileges of employment on the basis of the individual's gender, *see* 42 U.S.C. § 2000e–2(a)(1), or to classify employees or applicants for employment in a way that would deprive or tend to deprive them of employment opportunities because of their gender, *see id.* § 2000e–2(a)(2). *See also* 42 U.S.C. § 2000e–2(b) (making it unlawful for an employment agency to fail or refuse to refer for employment, or to classify for employment, any individual on the basis of gender); *id.* § 2000e(c) (defining employment agency as "any person regularly undertaking with or without compensation to procure employees for an employer or to procure for employees opportunities to work for an employer").

EEOC has primary responsibility for enforcing the prohibitions of Title VII. The statute gives the Commission authority to investigate a charge filed by a person claiming to be aggrieved or by a member of the Commission. If a charge has been filed in accordance with § 706(b), 42 U.S.C. § 2000e–5(b), the Commission is empowered to subpoena from the alleged discriminator information that "is relevant to the charge under investigation," *id.* § 2000e–8(a). "[T]he existence of a charge that meets the requirements set forth in § 706(b), 42 U.S.C. § 2000e–5(b), is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC." *Equal Employment Opportunity Commission v. Shell Oil Co.,* 466 U.S. 54, 65, 104 S.Ct. 1621, 1629, 80 L.Ed.2d 41 (1984) ("*Shell* ").

■ Section 706(b) provides, *inter alia,* that a charge, whether filed by a person claiming to be aggrieved or filed by a Commissioner, is to be in writing and under oath, and "shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e–5(b). The section also provides that when such a charge has been filed,

> the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer [or]

employment agency ... within ten days, and shall make an investigation thereof. *Id.* As to the content of a charge, the Commission has promulgated a regulation that provides, in pertinent part, that "[e]ach charge should contain ... [a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(3) (1994). The *Shell* Court held that, in the context of a pattern-and-practice charge, this content regulation requires only that

[i]nsofar as he is able, the Commissioner should identify the groups of persons that he has reason to believe have been discriminated against, the categories of employment positions from which they have been excluded, the methods by which the discrimination may have been effected, and the periods of time in which he suspects the discrimination to have been practiced.

*Shell,* 466 U.S. at 73, 104 S.Ct. at 1633.

The Court held that the "date, place and circumstances" requirement of § 706(b) itself is to be construed in the same way. *See* 466 U.S. at 81 ("we construe § 706(b) to require the Commission, within 10 days of the filing of a charge, to reveal to the employer all of the information that must be included in the charge itself under the current version of 29 CFR § 1601.12(a)(3)"). The purpose of the notice provisions is to provide an employer with "fair notice that accusations of discrimination have been leveled against [it]," *Shell,* 466 U.S. at 74, 104 S.Ct. at 1634, and "to ensure that the employer [i]s given some idea of the nature of the charge," *id.* at 75, 104 S.Ct. at 1634. Nonetheless, because "a charge of employment discrimination is not the equivalent of a complaint initiating a lawsuit," *id.* at 68, 104 S.Ct. at 1631, and because "it is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired," *id.* at 69, 104 S.Ct. at 1631, EEOC is not required to disclose more specific factual data, *see id.* at 70–71, 104 S.Ct. at 1631–32.

In *Shell,* the Commissioner's charge stated that, on a continuing basis from at least July 2, 1965, to the date of the charge, the company, at a particular refinery, had failed or refused to recruit, hire, promote, train, select, or assign (a) Blacks for office/clerical positions, (b) women for operative and laborer positions, and (c) both groups for managerial, professional, technical, craft, and service worker positions. The Supreme Court found that these details plainly satisfied the notice requirements.

■ In the present case, the principal question is whether the Commission's notice to Superior sufficed under the four-element standard set by *Shell* to identify (1) the groups of persons believed to have been discriminated against, (2) the categories of employment positions from which they have been excluded, (3) the methods by which the discrimination may have been effected, and (4) the periods of time in which the discrimination is believed to have been practiced. The last two *Shell* elements plainly present no problem here. The Charge asserted the Commissioner's belief that Superior had, *inter alia,* failed or refused to refer individuals for employment on the basis of their sex and had classified them in a way that tended to deprive them of employment opportunities on the basis of their sex, and had engaged in that conduct since at least February 7, 1990.

The Charge's identification of the first two elements, *i.e.,* the groups affected and the positions at issue, is less obvious but nonetheless sufficient. As to the groups affected, the Charge refers to "persons," "employees," "applicants," and "individuals." Given that the allegation is discrimination on the basis of gender, we do not regard the use of these broad categories as necessarily imprecise, since both men and women are susceptible to discrimination on the basis of gender. Indeed, though charges of such discrimination against women are generally the more prevalent, the Riley affidavit clearly suggested that there had been some discrimination against men. We think the implication in the Charge's choice of general terms such as "employees," together with its allegation that Superior has "classif[ied] ... employees" based on their gender, is that both men and women are being victimized by the designation of some jobs as suitable for women and others as suitable for men. We conclude that the groups are sufficiently identified.

The Charge also sufficiently focuses on one category of jobs from which the aggrieved individuals have been excluded or had their opportunities curtailed, *i.e.,* temporary positions with the Company's customer-clients. By alleging that Superior has discriminated by "classifying and/or referring" and "failing and/or refusing to refer" employees, the Charge appears to have excluded the in-house positions of employees who administer the temporary assignments of the alleged victims or who otherwise work solely in the Company's own operations. We do not regard the Charge as substantially flawed for failing to subdivide and categorize the customer-client positions that have been subjected to gender-based decisions; it may well be that EEOC is unable, without access to Superior's records, to provide such specificity. Further, position titles and job descriptions may vary from one customer-client to another; similar positions at different companies may have different titles, and similar titles may be used for positions entailing different responsibilities. Thus, it may be difficult at this stage for EEOC to give precise definitions of the positions in question. We note that there seems to be little question that the categories of positions for which Superior supplies temporary employees are "primarily clerical and light industrial" positions (Riley Aff. ¶ 2). And with respect to those positions, Superior's identification of at least one instance in which its customer-client had made a gender-based request, and its reference to a "few" such events (Riley Aff. ¶¶ 13, 18), confirm that Superior was given fair notice of the allegedly discriminatory nature of its conduct and that it had a quite clear "idea of the nature of the charge."

We conclude that the district court properly found that the information contained in the Charge and Notice of Charge satisfied the pertinent requirements.

### B. *Other Contentions*

Superior also pursues a number of other challenges to the district court's enforcement of the Subpoena, including its contentions that EEOC should have deferred to NYSDHR, and that EEOC's notice was untimely. Neither contention has merit.

■ Section 706(d) provides that when a Commissioner's charge alleges an unlawful employment practice occurring in a state that has an enforcement system paralleling that of Title VII, "the Commission shall, before taking any action with respect to such charge, notify the appropriate State or local officials and, upon request, afford them a reasonable time, but not less than sixty days ... unless a shorter period is requested, to act." 42 U.S.C. § 2000e–5(d). This deferral provision was designed in part to promote "time economy and the expeditious handling of cases," 110 Cong Rec. 9790 (1964) (remarks of Sen. Dirksen), and plainly permits state and local agencies to waive the 60–day deferral period and thus to authorize EEOC to take immediate action to investigate a charge filed by a Commissioner. *Cf. Equal Employment Opportunity Commission v. Commercial Office Products Co.,* 486 U.S. 107, 121, 108 S.Ct. 1666, 1674, 100 L.Ed.2d 96 (1988) (deferral period under § 706(c), 42 U.S.C. § 2000e–5(c), which is applicable to a charge filed by an individual, may be waived by state and local agencies through work-sharing agreements).

EEOC's work-sharing agreement with NYSDHR provides, *inter alia,* that "NYSDHR waives the exclusive initial processing rights granted to it under Sections 706(c) and 706(d) of Title VII in order to permit the EEOC to initially process ... Charges filed by an EEOC Commissioner." The district court's finding that EEOC had given NYSDHR notice of the Charge against Superior is not clearly erroneous, and the court correctly ruled that under this agreement, NYSDHR had been afforded the opportunity required by § 706(d) and EEOC was not required to delay its own investigation.

■ Superior also contends (a) that EEOC did not comply with the 10–day notice provision of § 706(b) because the District Office's October 2, 1992 cover letter stated that EEOC wished to investigate race and national origin discrimination by a company other than Superior, and (b) that the District Office's resending of that letter in November (after Superior had returned the October mailings) was beyond the permissible 10–day

notice period. The latter argument is moot, for we reject the former. The adequacy of the otherwise undefective October notice was not destroyed by the single inadvertent reference in the middle of the cover letter to a different company and different claims. Both the Charge and the Notice of Charge specified that Superior was the target of the investigation; no other company was mentioned in those documents. The cover letter itself was addressed to Superior, specified the right EEOC Charge docket number, correctly identified the Commissioner who had signed the Charge, stated that the Charge was "vs. Superior Temporary Services, Inc.," stated that a copy of the Charge was enclosed, and enclosed a copy of the Charge against Superior. The district court correctly concluded that the October 1 notice to Superior was in substantial compliance with the pertinent requirements.

Superior also makes numerous other contentions that border on the frivolous and do not warrant mention. We have considered all of its contentions and have found them to be without merit.

### C. *EEOC's Request for Sanctions*

EEOC, in its brief on appeal, has requested that we impose sanctions on Superior for making frivolous appellate arguments. In light of the presence of at least one argument that was not frivolous, we decline to order Superior to show cause why sanctions should not be imposed, *see* Fed.R.App.P. 38, as amended effective December 1, 1994 (sanctions for frivolous appeal may be imposed only "after a separately filed motion or notice from the court and reasonable opportunity to respond").

### CONCLUSION

We have considered all of Superior's contentions on this appeal and find in them no basis for reversal. The judgment of the district court is affirmed.

1. It is notable that even the *Shell* dissent at 90, 104 S.Ct. at 1642 agrees with this in its pointed observation:

OWEN, District Judge, dissenting:

I respectfully dissent, concluding that we do not have jurisdiction to consider the judicial enforcement of the subpoena that is before us. In *Equal Employment Opportunity Commission v. Shell*, 466 U.S. 54, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984) at 65, 104 S.Ct. at 1629, it is stated:

[T]he existence of a charge that meets the requirements set forth in § 706(b), 42 U.S.C. § 2000e–5(b), is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC.

Section § 2000e–5(b) further directs that the Commission's charge:

be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires.

Pursuant to that, the Commission promulgated regulations as to the contents of the charge as follows:

Each charge should contain ... [a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.

29 C.F.R. § 1601.12(a)(3) (1994).

In a proceeding involving an allegation of a "pattern-and-practice" violation, as here, *Shell*, at 73, 104 S.Ct. at 1633, held that the Commission's content regulation requires that:

[i]nsofar as he is able, the Commissioner should identify the groups of persons that he has reason to believe have been discriminated against, the categories of employment positions from which they have been excluded, the methods by which the discrimination may have been effected, and the periods of time in which he suspects the discrimination to have been practiced.

*Shell* further provides that "the EEOC is entitled to 'access only to evidence relevant to the charge under the investigation.'" *Id.* at 64, 104 S.Ct. at 1629. *Shell* further observes that the purpose for this is "Congress' desire to prevent the Commission from exercising unconstrained investigative authority...." *Id.* at 65, 104 S.Ct. at 1629.[1]

Experience teaches that Government administrative agency investigations can be prone to abuse; they are likely to be conducted more

Against this background, the two charges that are made here by the EEOC against Superior, while setting forth a starting point of February 7, 1990, are otherwise but a mere tracking of the statute, 42 U.S.C. 2000e–2, which under subsection (a)(2) makes it

an unlawful employment practice to . . . classify . . . employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex[.]

And paragraph 1 of the charge reads:

[T]he unlawful discriminatory practices include . . .:

. . . . .

Classifying and/or referring employees and applicants for employment in a way that deprives or tends to deprive them of employment opportunities or otherwise adversely affects their status as employees, because of their sex.

Next, the statute under subsection 2000e–2(b) makes it

an unlawful employment practice . . . to fail or refuse to refer for employment, or otherwise to discriminate against, any individual because of his . . . sex. . . .

And paragraph 2 of the charge reads:

[T]he unlawful discriminatory practices include:

Failing and/or refusing to refer for employment or otherwise discriminating against individuals on the basis of their sex.

The charge thereupon concludes with the following:

The persons aggrieved include all individuals who are, have been, or may in the future be affected by the unlawful employment practices complained of herein.

Thus, the charge, by merely tracking the statute, tells Superior virtually nothing.[2] It therefore, in my judgment, does not constitute an adequate charge under *Shell* to give us jurisdiction.[3]

Accordingly, I would reverse and remand with instructions that the EEOC be directed to articulate an adequate charge, if it can, and thereafter provide Superior Temporary Services, Inc. with a meaningful and adequate notice of circumstances of the allegedly unlawful employment pattern-and-practice discrimination. Then, if a remedy or resolution cannot be negotiated (*see Shell* at 90, 104 S.Ct. at 1642) there is time enough to come to the Courts for enforcement of an administrative subpoena. Unless and until that is done, I deem it wholly inappropriate for the EEOC to impose the substantial expense and disruption this subpoena will occasion on any enterprise, especially one as small as the one before us.

reasonably, more carefully, and more fairly, when the concerned parties are adequately notified of the causes of the investigation that are in progress.

**2.** The statute further provides that "the Commission shall serve a notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) on such employer. . . ." 42 U.S.C. § 2000e–5(b). *Shell* observes that the purpose of the notice is "to ensure that the employer [i]s given some idea of the nature of the charge." *Shell* at 75. Not only does the EEOC's notice in this case add nothing to what was contained in the charge itself, but the notice itself, doing again nothing more than tracking the statute § 2000e–2(b) which reads "race . . .

or national origin", erroneously asserts the charge to be based solely on "race and national origin" whereas the charge is based solely on "sex".

**3.** I note that in *Shell*, where the central issue was the adequacy of the charge to entitle the Commission to "secure judicial enforcement of an administrative subpoena compelling the employer to disclose personnel records and other material relevant to the charge[,]" the information in that charge, which *Shell* found to be adequate, asserted discrimination against Blacks and discrimination against women, and the jobs by categories from which each was excluded. *Shell* at 57 n. 1, 104 S.Ct. at 1625 n. 1.