## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Applicant–Appellee,

v.

## QUAD/GRAPHICS, INCORPORATED, Respondent–Appellant.

No. 94–3770.

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1995.

Decided Aug. 21, 1995.

Gwendolyn Young Reams, Sophia Constance Goodman (argued), James R. Neely, Jr., and Robert J. Gregory, E.E.O.C., Office of General Counsel, Washington, DC, for plaintiff-appellee.

Thomas W. Scrivner (argued) and Eric H. Rumbaugh, Michael, Best & Friedrich, Milwaukee, WI, for defendant-appellant.

Before CUMMINGS and RIPPLE, Circuit Judges, and WILL, District Judge.*

RIPPLE, Circuit Judge.

This is an appeal by Quad/Graphics, Inc. from an order of the district court enforcing an administrative subpoena of the Equal Employment Opportunity Commission. The district court rejected Quad/Graphics' claims that the subpoena was based on an invalid charge, was issued in bad faith, and was unduly burdensome. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

On November 5, 1993, Commissioner R. Gaull Silberman issued an EEOC Commissioner charge, dated November 1, against Quad/Graphics. A Commissioner charge is a discrimination claim issued by an EEOC Commissioner alone; there is no private charging party. Commissioner Silberman stated under oath that, "based on interviews, testimonial evidence and other information," she believed Quad/Graphics had engaged in discriminatory practices in violation of Title VII and the Age Discrimination in Employment Act. R.1, Ex.A. The charge alleged that Quad/Graphics had violated the statutes by:

Failing to recruit and/or hire Asians, Hispanics, and individuals over the age of 40 because of their race, national origin and/or age.

*Id.* The charge further alleged that these discriminatory acts had occurred during a period beginning on January 1, 1991. As a result of the charge, the EEOC submitted to Quad/Graphics a document containing ten specifically enumerated requests for employment data. After a series of meetings, Quad/Graphics refused to comply with the requests. The Commission then subpoenaed the information. Although the subpoena initially was not so limited, the EEOC later agreed to limit its scope to four plants in southeastern Wisconsin. Quad/Graphics refused to comply with the subpoena. The EEOC then sought to enforce the subpoena in the district court.

The district court enforced the subpoena. *See* 868 F.Supp. 1078 (E.D.Wis.1994). It rejected Quad/Graphics' argument that the Commission's charge was required to specify the job classifications under investigation. The court noted that, in *EEOC v. Shell Oil Co.*, 466 U.S. 54, 73, 104 S.Ct. 1621, 1633, 80 L.Ed.2d 41 (1984), the Supreme Court stated that the EEOC should supply such information "[i]nsofar as [it] is able." The court reasoned that, under *Shell Oil Co.*, "[i]dentification of the job classifications at issue may be preferable, but it is not mandatory." 868 F.Supp. at 1082. In the district court's view, the charge adequately described the alleged violations. Next, the district court rejected Quad/Graphics' claim that the EEOC undertook its investigation in bad faith. It found the EEOC's request for data reasonable and determined that there was no evidence that the EEOC initiated the investigation to retaliate against Quad/Graphics for failing to cooperate with a Department of Labor audit. Finally, the court rejected Quad/Graphics' claim that it would be unduly burdensome to comply with the subpoena. The court discounted Quad/Graphics' estimate that the company would require over 200,000 hours to comply with the subpoena on the ground that the estimate was based upon inefficient data collection methods. The district court termed the estimate "a gross exaggeration," *id.* at 1084, produced by "determining the most inefficient way in which to collect the requested data." *Id.* Subsequently, the district court stayed its order pending this appeal. 875 F.Supp. 558 (E.D.Wis.1995). The court believed the stay was justified because otherwise the case would become moot pending appeal. *Id.* at 560.

## II

## DISCUSSION

■■■ We turn first to the general principles that govern the enforcement of adminis-

---

* The Honorable Hubert L. Will of the District Court for the Northern District of Illinois is sit-
ting by designation.

trative subpoenas. As a general proposition, courts enforce an administrative subpoena if it seeks reasonably relevant information, is not too indefinite, and relates to an investigation within the agency's authority. *EEOC v. Tempel Steel Co.*, 814 F.2d 482, 484 (7th Cir.1987); *EEOC v. Illinois State Tollway Auth.*, 800 F.2d 656, 658 (7th Cir.1986); *EEOC v. A.E. Staley Mfg. Co.*, 711 F.2d 780, 783 (7th Cir.1983), *cert. denied*, 466 U.S. 936, 104 S.Ct. 1907, 80 L.Ed.2d 456 (1984); *see University of Pa. v. EEOC*, 493 U.S. 182, 191, 110 S.Ct. 577, 583, 107 L.Ed.2d 571 (1990). The court must, however, be satisfied that the demand for information is not "'too indefinite'" and that it has not "'been made for an illegitimate purpose.'" *University of Pa.*, 493 U.S. at 191, 110 S.Ct. at 583 (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 72 n. 26, 104 S.Ct. 1621, 1632 n. 26, 80 L.Ed.2d 41 (1984)). A subpoena will not be enforced if the demand is "excessively burdensome," *EEOC v. Illinois Dep't of Employment Sec.*, 995 F.2d 106, 109 (7th Cir. 1993), that is, if "compliance would threaten the normal operation of a respondent's business." *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir.1981).

■ As we noted in *Dow Chemical Co. v. Allen*, 672 F.2d 1262 (7th Cir.1982), a district court's decision to enforce an agency subpoena generally is reviewed deferentially:

A finding by the district court that documents are reasonably relevant to a legitimate agency purpose cannot be overturned absent a showing that the factual determinations on which it is based are clearly erroneous or that the ruling itself constitutes an abuse of discretion. Similarly, court assessments of whether disclosure would be burdensome and of what restrictions might be appropriate are decisions within the sound discretion of the trial court and should only be reversed for abuse of discretion save where they are intimately tied to a misunderstanding of law, in which case the ordinary standard of error applies.

*Id.* at 1267 (internal citations omitted).[1] We must now apply these general principles to the EEOC subpoena before us.

A. *The Relationship Between the Charge and the Subpoena*

1.

■ Under Title VII, the EEOC has the right to examine and copy "any evidence ... *relevant to the charge under investigation*," 42 U.S.C. § 2000e–8(a) (emphasis added), and may petition the district courts to enforce the subpoenas it issues pursuant to this authority.[2] Thus, the statute makes clear that an EEOC subpoena will not relate to an investigation within the agency's authority unless it seeks information relevant to the charge under investigation. "[U]nlike other

---

**1.** This approach comports with the standard employed by the majority of the circuits. *See, e.g., FDIC v. Wentz*, 55 F.3d 905, 908 (3d Cir.1995); *In re McVane*, 44 F.3d 1127, 1135 (2d Cir.1995); *Reich v. National Eng'g & Contracting Co.*, 13 F.3d 93, 98 (4th Cir.1993); *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. RTC*, 5 F.3d 1508, 1516 (D.C.Cir.1993) (citing *FTC v. Lonning*, 539 F.2d 202, 210 n. 14 (D.C.Cir.1976)); *United States v. Medlin*, 986 F.2d 463, 466 (11th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 347, 126 L.Ed.2d 311 (1993); *NLRB v. G.H.R. Energy Corp.*, 707 F.2d 110, 113 (5th Cir.1982); *EEOC v. Packard Elec. Div.*, 569 F.2d 315, 317–18 (5th Cir.1978). *But see Reich v. Montana Sulphur & Chem. Co.*, 32 F.3d 440, 443 (9th Cir.1994) ("We review de novo the district court's decision regarding enforcement of an agency subpoena.") (citing *EPA v. Alyeska Pipeline Serv. Co.*, 836 F.2d 443, 445–46 (9th Cir.1988)), *cert. denied*, —— U.S. ——, 115 S.Ct. 1355, 131 L.Ed.2d 213 (1995); *United States v. Markwood*, 48 F.3d 969 (6th Cir.1995), which reviewed de novo "the district

court's interpretation and application of [a federal statute] and the *case law regarding enforcement of administrative subpoenas,*" *id.* at 975 (emphasis added), comports with the view, expressed in *Dow Chemical Co.*, that enforcement decisions hinging upon a district court's legal understanding are reviewed in plenary fashion. *See also Burlington N.R.R., Co. v. OIG, R.R. Retirement Bd.*, 983 F.2d 631, 638–43 (5th Cir.1993) (reviewing district court's factual determinations for clear error and its interpretations of law de novo); *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 475 (4th Cir.) ("Because the district court's rulings were based on the legal conclusion that the EEOC lacked the authority to make the [subpoena] demands, we review the district court's order for errors of law."), *cert. denied*, 479 U.S. 815, 107 S.Ct. 68, 93 L.Ed.2d 26 (1986).

**2.** *See* 42 U.S.C. § 2000e–9 (incorporating the enforcement powers available to the National Labor Relations Board under 29 U.S.C. § 161(2)).

federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence relevant to the charge under investigation." *EEOC v. Shell Oil Co.,* 466 U.S. 54, 64, 104 S.Ct. 1621, 1628–29, 80 L.Ed.2d 41 (1984) (internal footnote, quotation and citation omitted). Accordingly, an EEOC subpoena will not be valid unless the underlying charge supporting the subpoena is itself a valid charge. *Id.* at 65, 104 S.Ct. at 1629 ("[T]he existence of a charge that meets the requirements set forth in § 706(b) . . . is a jurisdictional prerequisite to judicial enforcement of a subpoena issued by the EEOC."); *see University of Pa.,* 493 U.S. at 191, 110 S.Ct. at 583; *see also* 42 U.S.C. § 2000e–6(e) (requiring EEOC to ensure that its investigations comply with 42 U.S.C. § 2000e–5, which sets forth minimal requirements for valid charges).

Section 706 of Title VII provides that discrimination charges "shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." *Id.* § 2000e–5(b). Pursuant to the authority delegated to it in section 706, the Commission has promulgated a regulation which states, in relevant part, that each charge of discrimination should contain "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." 29 C.F.R. § 1601.12(a)(3). In *Shell Oil Co.,* the Supreme Court considered in detail what section 1601.12(a)(3) required of Commissioners who file charges of discrimination under Title VII. The Court said:

> Insofar as he is able, the Commissioner should identify the groups of persons that he has reason to believe have been discriminated against, the categories of employment positions from which they have been excluded, the methods by which the discrimination may have been effected, and the periods of time in which he suspects the discrimination to have been practiced.

466 U.S. at 73, 104 S.Ct. at 1633.

Quad/Graphics contends that Commissioner Silberman's charge does not satisfy Title VII's minimal requirements and, therefore, that the subpoena issued pursuant to that charge is invalid. Specifically, Quad/Graphics' argument is that the Commissioner's charge contains only conclusory allegations of discrimination and does not state "the categories of employment positions" from which the affected individuals allegedly have been excluded. In response, the EEOC argues that the level of specificity in the charge at issue in this case is the same as that in the charge that passed muster before the Supreme Court in *Shell Oil Co.* It stresses that the methods of discrimination and the time in which the alleged discrimination took place are set forth explicitly. With respect to the absence of employment categories, the EEOC does not dispute that Commissioner Silberman's charge fails to provide explicitly this information. It contends, however, that *Shell Oil Co.* does not mandate that all charges include such data, but instead suggests that Commissioners provide such information "insofar as they are able."

### 2.

We believe that the contentions of Quad/Graphics can be assessed only in the context of the Supreme Court's entire discussion in *Shell Oil Co.* The Court approached the issue of the level of specificity required in a charge by examining the role that the charge plays in the overall enforcement process. It noted that it is clear that the Congress, in enacting Title VII, had intended to restrict the investigative power of the EEOC to the evaluation of actual charges filed with the agency; the Commission did not have the power, granted to many other agencies, to conduct sua sponte investigations of any activity within its statutory area of responsibility. 466 U.S. at 64, 104 S.Ct. at 1628–29. Therefore, a valid charge is a condition precedent to the issuance of a subpoena. *Id.* at 65, 104 S.Ct. at 1629. The Court then turned to the statutory and regulatory provisions that we have set out above and noted that these provisions must be read in the context of "[t]hree considerations[ ] drawn from the structure of Title VII." *Id.* at 68, 104 S.Ct. at 1631. First, noted the Court, a charge of discrimination ought not be considered the equivalent of a complaint initiating a lawsuit. The function of the charge is to inform the

EEOC that someone believes that the employer has violated the statute. *Id.* It is the trigger for an investigation, not an adjudication of liability under the Act. Secondly, continued the Court, the charge, because it does trigger an investigation, is the basis for the EEOC's access to relevant information from the employer. Here the Court emphasized the need to balance competing considerations. On the one hand, at the time of the amendment of the Act, the Congress was certainly aware that the courts had interpreted the subpoena powers of the agency as permitting it to obtain all information "that might cast light on the allegations against the employer," 466 U.S. at 68–69, 104 S.Ct. at 1631; Congress let that interpretation stand. On the other hand, the Congress continued the "relevance requirement": The EEOC had the right only to information that pertained to a valid charge. This requirement cannot be rendered a "nullity" by an overly broad interpretation of the Commission's regulation requiring a "clear and concise statement of the facts," 29 C.F.R. § 1601.12(a)(3). *See* 466 U.S. at 69, 104 S.Ct. at 1631. Lastly, the Court noted that the ability of the EEOC to investigate charges of systemic discrimination ought not be impaired. When these three considerations are taken into account, continued the Court, it is clear that the regulation cannot be read to impose on the Commissioner the duty to specify in the charge "the persons injured, when and how." *Id.* at 71, 104 S.Ct. at 1632. This information is the expected product of the investigation that the Commissioner, by filing the charge, requires the Commission to undertake. The purpose of the charge is not to require the Commissioner to substantiate the charge before the very investigation that ought to produce that result.

It is against the backdrop of these considerations that the Court set forth the four factors upon which both the district court and the parties have focused. Given the context in which they were developed, we think that it is clear that these four factors must be applied pragmatically, with the purpose of the charge in the overall framework of EEOC proceedings firmly in mind. Moreover, because we believe that such a practical approach is most in keeping with the analysis of the Supreme Court in *Shell Oil Co.,* we do not believe that these four factors can be treated as existing in hermetically sealed containers.[3] Rather, the key inquiry must be whether the allegations in the charge, when assessed against these four factors, fulfill the legislative and regulatory command that the charging Commissioner identify as precisely as possible the appropriate area of inquiry to determine whether there is a violation of the Act.

■ In this case, the district court took the view that, at that early stage of the proceedings, it would not have been possible for the Commissioner to state with particularity the specific job titles in which she suspected the discrimination. The court drew that conclusion from its reading of the affidavit of the company's employee, Mary Protz, that there were "several thousand job titles" among the 5,059 employees at the four plants in Wisconsin that were the subject of the EEOC's investigation. The company argues before us that, although it might not have been possible for the Commissioner to delineate with any precision which of these job titles were the subjects of discrimination, the Commissioner could have delineated the broader categories, such as the seven EEO–1 classifications, that were affected. We do not know, however, that it would have been possible for the Commissioner to so limit the inquiry. Nor do we believe that the Commissioner ought to be required to state affirmatively the obvious—that, in the context of a systemic discrimination charge, the absence of a delineation of the affected job classifications represents a judgment that, at least at this initial investigative stage, the possibility of discrimination pervading all areas of the company's employment must be considered. Indeed, in cases of systemic discrimination, such a situation may not be unusual.

**3.** We do not read the decisions of the other circuits as establishing a more rigid approach to these factors. *Cf. EEOC v. Superior Temporary Servs., Inc.,* 56 F.3d 441, 446 (2d Cir.1995);

*EEOC v. Bellemar Parts Indus., Inc.,* 865 F.2d 780, 781 (6th Cir.), *modified on other grounds,* 868 F.2d 199 (6th Cir.1989); *EEOC v. K–Mart Corp.,* 796 F.2d 139, 145 (6th Cir.1986).

It is important to note that, here, the absence of particular categories did not leave the charge without meaningful limitations. Although the charge does not specify the affected job classifications, it does describe, with significant particularity, the suspected illegality and therefore the investigative need. The charge informed the EEOC of the targets of the discrimination, the type of discrimination and, with significant precision, the time frame in which the alleged discrimination took place. The aggregate effect was to narrow sufficiently the reach of the administrative investigation. An investigation circumscribed in this fashion fulfills the congressional mandate that the scope of the inquiry be limited without unduly hampering the ability of the EEOC to accomplish its statutory mission of identifying discriminatory practices that violate the federal laws that it has the responsibility to enforce.[4]

B. *Excessive Burden of Compliance*

■ Quad/Graphics also contends that the subpoena should not be enforced because it is excessively burdensome. Quad/Graphics argues, based upon an employee affidavit, that it will require over 200,000 employee-hours to comply with the EEOC subpoena. Although it terms this estimate conservative, it contends that compliance would be unduly burdensome even if the time estimate was drastically reduced. The company also focuses our attention on the EEOC's tenth

information request, which seeks, in pertinent part, the reason Quad/Graphics has rejected each of the 36,188 job applicants that it has refused to hire since January 1, 1991. It claims that it has not recorded why each of these applicants was rejected, and avers that unearthing this data would be a monumental task.

Reminding us that the charge before the Commission is one of systemic discrimination, the EEOC submits that Quad/Graphics has not met its burden of showing that compliance with the subpoena will be unduly burdensome. It argues that Quad/Graphics' time estimates are grossly exaggerated. Finally, it states that Quad/Graphics will be required to generate only that information that exists in company documents or the minds of its employees.

To establish that the EEOC's subpoena is excessively burdensome, Quad/Graphics must show that compliance would threaten the normal operation of its business. *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir.1981). Quad/Graphics attempts to meet this burden by relying upon the affidavit of Mary Protz, the employee who would have primary responsibility for researching and compiling the information sought by the subpoena. Ms. Protz estimated that compliance would require 203,994 hours. Although Quad/Graphics has done more than simply assert that compliance would be burdensome,[5] we cannot say that the district court

---

4. The EEOC, for the first time on appeal, argues that its authority to subpoena information relevant to an investigation under the Age Discrimination in Employment Act ("ADEA") is not predicated upon the existence of a valid discrimination charge. *See* 29 U.S.C. § 626(a) (stating, in pertinent part, that, under the ADEA, the EEOC "shall have the power to make investigations and require the keeping of records necessary or appropriate for the administration of this chapter"); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S.Ct. 1647, 1653, 114 L.Ed.2d 26 (1991) ("[T]he EEOC's role in combating age discrimination is not dependent on the filing of a charge."); *cf. EEOC v. American & Efird Mills, Inc.*, 964 F.2d 300, 304 (4th Cir. 1992) (ordering subpoena enforced despite the absence of a timely ADEA charge and specifically noting that case would be different under Title VII, where valid charge is a jurisdictional prerequisite); *EEOC v. Allstate Ins. Co.*, 30 FEP Cas. (BNA) 573, 1981 WL 260, at *3 (N.D.Ill. Apr. 2, 1981) (rejecting claim that "the EEOC may not

issue an administrative subpoena under ADEA absent issuance of a 'charge'" on ground that there was no authority for the proposition). We decline to address this contention.

5. *See EEOC v. A.E. Staley Mfg. Co.*, 711 F.2d 780, 788 (7th Cir.1983) (rejecting claim of undue burden where company "made no showing that enforcement of the subpoena would threaten the normal operation of its business"), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1907, 80 L.Ed.2d 456 (1984); *EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 313 (7th Cir.1981) (same and noting that company had failed to "present any affidavits to support its conclusionary assertion"); *cf. FTC v. Shaffner*, 626 F.2d 32, 38 (7th Cir.1980) (finding insufficient an affidavit that indicated neither "the number of files involved, the number of estimated work hours required to effect compliance, nor the estimated costs of compliance").

abused its discretion in rejecting Quad/Graphics' claim—a claim upon which Quad/Graphics had the burden of proof.[6] Ms. Protz's affidavit establishes on its face that its estimates are inflated. For example, Ms. Protz based her estimate that it would require over 180,000 hours to comply with the EEOC's tenth information request, in part, on her assumption that Quad/Graphics would be required to "interview[ ] each unsuccessful applicant." *See* R.8 at 8. However, as the Commission acknowledged at oral argument, it is without authority to compel Quad/Graphics to obtain information that the company does not control. *Cf. Bay Shipbuilding Corp.*, 668 F.2d at 313 ("If a respondent lacks the information necessary to respond to part of a subpoena, of course it would be excused pro tanto."). Ms. Protz's estimates with respect to additional questions, as the district court emphasized in greater detail, were similarly exaggerated. *See* 868 F.Supp. at 1084. Finally, we note that the EEOC offered to mitigate the task of compliance by accepting a random sample of applications in response to its tenth information request, which seeks the reason Quad/Graphics has rejected each job applicant the company has turned down since 1991. *Cf. EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir.1994) (limiting time period subject to subpoena from twelve and one-half to just over three years because information sought at beginning of period was of tenuous relevance to individual's claim of discrimination and full compliance would be costly and time consuming). We note that Ms. Protz estimated, without accounting for the EEOC's offer of random sampling, that almost ninety percent of the hours Quad/Graphics would require to comply with the subpoena related to compliance with this question. Accordingly, Quad/Graphics has failed to meet its burden of establishing that compliance with the EEOC subpoena would threaten its normal business operations.

### C. *Bad Faith*

Quad/Graphics also contends, in an abbreviated argument, that the EEOC subpoena should not be enforced because it was issued in bad faith; specifically, Quad/Graphics maintains that the EEOC undertook its investigation in retaliation for Quad/Graphics' failure to cooperate fully with a Department of Labor investigator during a routine audit. On the record before us, we cannot say the district court abused its discretion in rejecting this claim. *See Dow Chem. Co. v. Allen*, 672 F.2d 1262, 1267 (7th Cir.1982).

### Conclusion

For the foregoing reasons, the district court's order enforcing the subpoena is affirmed.

AFFIRMED.

---

**6.** *Cf. EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir.1993) (discussing affidavit which stated that compliance would require two full-time employees to work six months, but which failed, as does Quad/Graphics' affidavit, to offer "any specific estimate of [the] cost involved"); *EEOC v. Maryland Cup Corp.*, 785 F.2d 471, 479 (4th Cir.) (rejecting challenge to subpoena where company had shown neither that cost of gathering information was "unduly burdensome in the light of the company's normal operating costs," nor that "gathering the information would threaten its normal business operations"), *cert. denied*, 479 U.S. 815, 107 S.Ct. 68, 93 L.Ed.2d 26 (1986).